IN RE the COMMITMENT OF Shawn David SCHULPIUS:

STATE of Wisconsin, Petitioner-Respondent,

v.

Shawn David SCHULPIUS, Respondent-Appellant.†

Court of Appeals

*No. 2011AP2565. Oral argument October 4, 2012.
—Decided November 27, 2012.*

2012 WI App 134

(Also reported in 825 N.W.2d 311.)

† Petition for Review filed Dec. 26, 2012.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Ellen Henak* and *Hannah B. Schieber* assistant state public defenders of Milwaukee. There was oral argument by *Hannah B. Schieber*.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Warren D. Weinstein* assistant attorney general. There was oral argument by *Warren D. Weinstein*.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Shawn David Schulpius, in July 1996, was civilly committed by the State as a sexually violent person under WIS. STAT. ch. 980 (2009–10).[1] In January 2010, his petition for discharge was denied after a hearing before a jury. He now appeals from the circuit court's order denying his subsequent August 2010 petition for discharge without a hearing. Schulpius argues that: (1) the circuit court applied the wrong standard to determine whether his August 2010 petition entitled him to a hearing pursuant to WIS. STAT. § 980.09(2); and (2) even if we accept the State's standard for determining when a hearing is required under § 980.09(2), he made a sufficient showing in his August 2010 petition to require a hearing.

¶ 2. More specifically, Schulpius argues that WIS. STAT. § 980.09(2) entitles a petitioner to a hearing if, after considering evidence of the petitioner's progress *since the date of his initial commitment,* the court determines that the evidence shows that a reasonable trier of fact could determine that the petitioner currently fails to meet the criteria for commitment as a sexually violent person. Schulpius argues that the circuit court erred by construing the statute to require evidence of a change in the petitioner's status *since the date of his last discharge hearing.*

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 3. The State agrees that Wis. Stat. § 980.09(2) requires the circuit court to consider all of the evidence of the petitioner's progress since the initial commitment hearing, but argues that the petitioner is entitled to a discharge hearing only where there is also new evidence, not previously considered by a trier of fact, from which a reasonable trier of fact could conclude that the petitioner does not meet the criteria for commitment as a sexually violent person.

¶ 4. Based on our independent review of Wis. Stat. § 980.09(2), we agree with the State that, while the circuit court must consider all of the evidence in the record when determining whether a discharge hearing is warranted, the petitioner must also produce some new evidence, not previously considered by a trier of fact, which demonstrates that he does not meet the criteria for commitment under Wis. Stat. ch. 980. Because Schulpius has not set forth the requisite new evidence—to wit, an expert opinion, based on new facts, new professional knowledge, or new research— demonstrating that he does not meet the criteria for commitment as a sexually violent person, we affirm the denial of his request for a discharge hearing.

## BACKGROUND[2]

¶ 5. The circuit court found Schulpius to be a sexually violent person under Wis. Stat. ch. 980 in July 1996, based upon predicate offenses that occurred when

[2] Schulpius's Wis. Stat. ch. 980 case has a long procedural history, including multiple appellate reviews, that need not be detailed here. We include only those details necessary to decide the issue currently before us on review.

he was a juvenile.[3] The circuit court originally determined that supervised release was appropriate, but following controversy and difficulties concerning Schulpius's placement, the circuit court committed Schulpius to institutional care in Sand Ridge Secure Treatment Center ("Sand Ridge") in November 2000. This appeal concerns: (1) the evidence presented to the jury at Schulpius's January 2010 discharge hearing, which was based on consolidated annual re-examination reports from 2006, 2007, 2008, and 2009; and (2) the evidence in the record supporting Schulpius's August 2010 petition for discharge.

¶ 6. On July 19, 2006, pursuant to WIS. STAT. § 980.07, the Department of Health and Family Services ("the Department") filed its annual re-examination report, accompanied by a treatment progress report.[4] Dr. William A. Schmitt recommended that the circuit court not consider Schulpius for either supervised release or discharge. The circuit court then appointed an examiner to serve as Schulpius's court-appointed expert pursuant to WIS. STAT. § 980.03(4) (2003–04).[5] That

---

[3] The original commitment order was signed by the Honorable John Franke.

[4] WISCONSIN STAT. § 980.07(6) requires the Department to submit to the court an annual report comprised of the re-examination report and the treatment progress report. The re-examination report is to be prepared annually by an examiner appointed by the Department to examine an individual's mental condition "to determine whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged." See § 980.07(1). The treatment progress report is to be completed annually by an individual's treatment provider and is to address a number of factors enumerated by the statute. See § 980.07(4).

[5] WISCONSIN STAT. § 980.03(4) (2003–04) authorized the circuit court, at the time of an individual's re-examination, to

examiner, Dr. Luis Rosell, filed a report with the court on March 28, 2007, in which he concluded that Schulpius had made sufficient progress for the court to consider whether he still met the definition of a sexually violent person under WIS. STAT. ch. 980.

¶ 7. At a June 2007 hearing, the circuit court found probable cause for discharge based upon the experts' reports.[6] As such, at a later court date, the circuit court set the case for a discharge hearing.[7] Before the discharge hearing could be held, the Department filed its annual reports for 2007, 2008, and 2009. The parties agreed that all four reports—from 2006, 2007, 2008, and 2009—would be considered at the discharge hearing.

---

appoint an examiner for the individual upon request. The Honorable William Brash entered the order appointing counsel here.

[6] At the time the State filed its July 2006 annual report, WIS. STAT. § 980.09(2)(a) (2003–04) provided that if an individual did not "affirmatively waive" his right to file a petition for discharge after receiving the State's annual report, the court was required to hold a probable cause hearing "to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person." *Id.* Schulpius refused to sign the waiver after receiving the State's 2006 report, and therefore, the court was required to hold a probable cause hearing. This requirement was changed in 2006, 2005 Wis. Act 434, § 123 (eff. Aug. 1, 2006), and the current statute requires an individual to file a petition for discharge to initiate a review for a discharge hearing, and does away with the old probable cause standard. *See* WIS. STAT. § 980.09 (2009–10).

Judge Brash presided over the June 2007 probable cause hearing.

[7] Due to judicial rotation, the Honorable Patricia D. McMahon was assigned to the case and set the date for the discharge hearing.

357

¶ 8. On July 12, 2007, the Department filed its annual re-examination report (again, completed by Department-appointed examiner Dr. Schmitt), accompanied by the treatment progress report. Again, Dr. Schmitt recommended that the circuit court not consider Schulpius for either supervised release or discharge.

¶ 9. On July 10, 2008, the Department filed its annual re-examination report (this time completed by Department-appointed examiner Dr. Robert Barahal), accompanied by the treatment progress report. In his report, Dr. Barahal: (1) diagnosed Schulpius with pedophilia, which "predisposes him to commit sexually violent actions as defined by Chapter 980"; (2) opined that Schulpius "is still more likely than not to commit additional sexually violent acts" and has not yet progressed sufficiently in treatment; and (3) recommended that the circuit court not consider either discharge or supervised release for Schulpius.

¶ 10. On November 20, 2008, the Department filed an addendum to Dr. Barahal's July 2008 report. In the addendum, Dr. Barahal changed his opinion on whether Schulpius was still dangerous, stating that changes in protocols for scoring the Static-99[8] actuarial exam led him to re-evaluate his position. As such, he stated that it was "no longer [his] opinion to a reasonable degree of professional certainty that . . . Schulpius remains more likely than not to commit sexually violent acts."

¶ 11. Following Dr. Barahal's change in position, the State successfully sought an adjournment. On August 5, 2009, the Department filed its annual re-examination report (again, completed by Dr. Barahal)

---

[8] There are references in the record to both the Static-99 and the Static-99R. The Static-99R is the updated version of the Static-99.

and report of treatment progress. In his latest report, Dr. Barahal stated that Schulpius "is currently in a category that is not clearly beneath or above the legal threshold of 'more likely than not' that he will commit another sexually violent offense should he be discharged. Subsequently, [Dr. Barahal] [could not] confidently offer a specific recommendation to the court as to whether . . . Schulpius should be discharged."

¶ 12. The discharge hearing on the 2006, 2007, 2008, and 2009 annual re-examinations was held before a jury on January 4 through January 6, 2010. Three key witnesses testified on behalf of the State: Dr. Anthony Jurek, Dr. Barahal, and Dr. Richard McKee. Dr. Rosell testified for the defense.

¶ 13. As relevant to Schulpius's appeal, Dr. Barahal testified that he reviewed more than 1000 pages of records and interviewed Schulpius twice before he rendered an opinion. When asked his opinion on whether Schulpius's risk level made it more likely than not that he would engage in future acts of sexual violence, Dr. Barahal said he was "not sure." He added:

> I think he has, his risk is in a category, I believe the statutory criterion, as I understand it, is that the offender, it isn't whether he's dangerous or not dangerous. It's whether he's more than 50 percent likely to do it again. And I think he's in a category which probably approaches 50 percent, but may or may not be above that.

Dr. Barahal also testified that he scored Schulpius a six on the Static-99.

¶ 14. Following the experts' testimony, the jury found that Schulpius was still a sexually violent person, and the circuit court denied his petition for discharge. Schulpius's appellate counsel filed a no-merit report with

this court, and we summarily affirmed the circuit court's order to deny the petition. *State v. Schulpius*, No. 2010AP2865–NM, unpublished slip op. (WI App Apr. 11, 2012).

¶ 15. On July 22, 2010, approximately six months after the January 2010 discharge hearing, the Department filed its annual re-examination report (again, completed by Dr. Barahal) and treatment progress report.

¶ 16. In his July 2010 report, Dr. Barahal concluded, "to a reasonable degree of psychological certainty[,] that . . . Schulpius does not meet criteria for supervised release under Chapter 980.07(4)." Dr. Barahal also found that:

> Schulpius'[s] probability of committing another sexually violent act approaches, but is not clearly above or beneath, 50%. Therefore, it [was Dr. Barahal's] opinion to a reasonable degree of psychological certainty that . . . Schulpius'[s] degree of risk does not meet the legal criterion . . . required for continued civil commitment under Chapter 980.

¶ 17. The July 2010 treatment report, completed by staff at Sand Ridge, described the sexually-violent-person treatment program at the institution, explaining that it consisted of three phases, followed by a fourth phase intended to be completed during supervised release. The report noted that Schulpius was in phase one when the report was written and described phase one as providing an "opportunity to improve his general self-management skills and to work to ameliorate personality disorder symptoms or other general factors that may interfere with his effective participation in treatment." One of Schulpius's goals was to work towards moving into phase two. The report stated that during phase two "the patient is expected to identify and learn to refute the kind of thinking that in the past led to him offending."

¶ 18. The 2010 treatment report also stated that Sand Ridge classifies patients according to their "level of cognitive functioning and level of psychopathic personality traits." The report noted that, since the 2009 treatment report, Schulpius had returned to the conventional treatment track. He was placed in the conventional treatment track because it had "been judged that his cognitive abilities [were] sufficient that no special accommodations [were] required for him to participate meaningfully in treatment and that he d[id] not show levels of psychopathic traits that materially interfere with his treatment participation." The report concluded that Schulpius had not made significant progress in treatment as he was only in phase one, and until he completed phase three he would not have made significant treatment progress toward lowering his risk for committing future sexually violent acts.

¶ 19. In August 2010, on the heels of the Department's July 2010 report, Schulpius filed a new petition for discharge on the grounds that he no longer met the criteria for commitment as a sexual violent person. More specifically, he alleged that he "no longer fit the definition of the law" because he was "no longer over 50% likely to reoffend."

¶ 20. Initially, the State did not oppose holding a hearing on Schulpius's petition for discharge. However, in March 2011, the State filed a motion for reconsideration, requesting that the circuit court deny Schulpius's petition for discharge without a hearing. The State contended that the recently decided Wisconsin Supreme Court case *State v. Arends*, 2010 WI 46, 325 Wis. 2d 1, 784 N.W.2d 513, and two recently decided Wisconsin Court of Appeals cases interpreting *Arends*, made clear that before a petitioner is entitled to a discharge hearing, he must allege facts from which the court or jury may

conclude that the petitioner's condition has changed since the last discharge hearing such that the petitioner no longer qualifies for commitment as a sexual violent person.[9] The State argued that Schulpius's August 2010 petition and supporting documents did not allege any facts from which it could be concluded that his condition had changed since the January 2010 discharge hearing, and therefore, contended that he was not entitled to a hearing under *Arends*.

¶ 21. The circuit court agreed with the State's position and granted its motion for reconsideration, thereby denying Schulpius's petition for discharge without a hearing. Schulpius appeals that order.

## DISCUSSION

■

¶ 22. Under WIS. STAT. § 980.09, an individual committed as a sexually violent person may file a petition for discharge at any time. However, before granting the petitioner a hearing, the circuit court must go through a two-step process "aimed at weeding out meritless and unsupported petitions, while still protecting a petitioner's access to a discharge hearing." *Arends*, 325 Wis. 2d 1, ¶ 22.

■

¶ 23. To begin, under WIS. STAT. § 980.09(1),[10] the circuit court performs a paper review of the petition

---

[9] The State now concedes in its respondent's brief on appeal that the two appellate cases it previously relied on, *State v. Sugden*, 2010 WI App 166, 330 Wis. 2d 628, 795 N.W.2d 456 (filed Nov. 18 2010), and *State v. Parrish*, 2011 WI App 44, 332 Wis. 2d 317, 797 N.W.2d 935 (filed Feb. 15, 2011) (unpublished), do not address the issue of when WIS. STAT. § 980.09(2) requires a circuit court to conduct a discharge hearing.

[10] WISCONSIN STAT. § 980.09(1) states:

and its attachments "to determine whether the facts alleged are those 'from which the court or jury may conclude the person's condition has changed since the date of his . . . initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.'" *Arends*, 325 Wis. 2d 1, ¶ 26 (citing § 980.09(1)). If so, "the court then proceeds to a review under § 980.09(2)." *Arends*, 325 Wis. 2d 1, ¶ 30.

■■

¶ 24. Under Wis. Stat. § 980.09(2),[11] the circuit court reviews "all the items enumerated in [the statute] that are in the record at the time of review," *Arends*, 325 Wis. 2d 1, ¶ 33, including: "(1) any current and past

> A committed person may petition the committing court for discharge at any time. The court shall deny the petition under this section without a hearing unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.

We note that while § 980.09 does not include the (1) designation, the first paragraph of the statute is commonly referred to as (1).

[11] Wisconsin Stat. § 980.09(2) states:

> The court shall review the petition within 30 days and may hold a hearing to determine if it contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person. In determining under this subsection whether facts exist that might warrant such a conclusion, the court shall consider any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state. If the court determines that the petition does not contain facts from which a court or jury may conclude that the person does not meet the criteria for commitment, the court shall deny the petition. If the court determines that facts exist from which a court or jury could conclude the person does not meet criteria for commitment the court shall set the matter for hearing.

re-examination reports or treatment progress reports filed under Wis. Stat. § 980.07; (2) relevant facts in the petition and in the State's written response; (3) arguments of counsel; and (4) any supporting documentation provided by the person or the State," *Arends*, 325 Wis. 2d 1, ¶ 32 (formatting altered). The court may "order the production of any of the enumerated items not in the record, but is not required to do so." *Id.*, ¶ 33. The circuit court must order a discharge hearing if it determines that "the enumerated items contain any facts from which a reasonable trier of fact could conclude that the petitioner does not meet the criteria for commitment as a sexually violent person." *Id.*, ¶ 43.

¶ 25. Here, the parties do not dispute the circuit court's finding under Wis. Stat. § 980.09(1) that Schulpius's petition alleges facts from which a reasonable factfinder could conclude that his condition has changed. *See id.* Rather, the issue on appeal is whether Schulpius met the showing required for a discharge hearing under § 980.09(2). To answer that question, we consider: (1) what showing is required to entitle a petitioner to a discharge hearing under § 980.09(2); and (2) whether Schulpius met that showing here.

**I. Wisconsin Stat. § 980.09(2) requires a petitioner to bring forth new evidence, not considered by a prior trier of fact, demonstrating that the petitioner currently does not meet the criteria for commitment as a sexually violent person.**

¶ 26. Wisconsin Stat. § 980.09(2) specifically enumerates what evidence a court should consider when

determining whether a petitioner is entitled to a discharge hearing, but unlike § 980.09(1), § 980.09(2) does not specifically say whether the court should consider the evidence "since the date of his . . . initial commitment" or since some other undesignated time. However, the Wisconsin Supreme Court stated in *Arends* that § 980.09(2) requires a circuit court, when deciding whether to hold a discharge hearing, to consider "whether the *record in toto,* including all reports, the petition and any written response, arguments of counsel, and any other documents submitted, contain facts that could support relief for the petitioner at a discharge hearing." *Arends*, 325 Wis. 2d 1, ¶ 38. By referencing "the *record in toto,*" the supreme court expressly stated that the circuit court should consider all reports and documents that have been filed since the petitioner's initial commitment. *See id.*

¶ 27. The parties agree that WIS. STAT. § 980.09(2) and *Arends* require the circuit court to consider all of the evidence in the record. The issue raised on appeal is whether the petitioner can rely solely on evidence already considered and rejected by a previous trier of fact to meet his burden for a new discharge hearing. Resolution of this debate requires us to interpret § 980.09. The interpretation of a statute raises a question of law that we construe independently of the circuit court. *See State v. Pocan*, 2003 WI App 233, ¶ 5, 267 Wis. 2d 953, 671 N.W.2d 860.

■

¶ 28. The supreme court noted in *Arends* that while WIS. STAT. § 980.09(2) requires the circuit court to *consider* all of the reports filed since the petitioner's initial commitment, the circuit court is still free to weigh the reports as it sees fit, stating: "This is not to say that the court must take every document a party

submits at face value. The court's determination that a court or jury could conclude in the petitioner's favor must be based on facts upon which a trier of fact could reasonably rely." *Arends*, 325 Wis. 2d 1, ¶ 39. Ultimately, the court said that the standard "is similar to that used in a civil action to decide a motion to dismiss at the close of evidence under WIS. STAT. § 805.14(4)." *Arends*, 325 Wis. 2d 1, ¶ 42. "If any facts support a finding in favor of the petitioner, the court must order a discharge hearing on the petition; if no such facts exist, the court must deny the petition." *Id.*, ¶ 43.

¶ 29. However, the supreme court in *Arends* was not asked to apply the "any facts" test to evidence on which a previous factfinder had already concluded that the petitioner met the criteria for initial or continued commitment. That issue was addressed by this court in *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684, and *State v. Kruse*, 2006 WI App 179, 296 Wis. 2d 130, 722 N.W.2d 742. In both *Combs* and *Kruse*, we addressed whether a new expert's re-examination opinion, favorable to the petitioner, is actually "new" when it is based solely on evidence considered by other experts at a petitioner's original commitment hearing. *Combs*, 295 Wis. 2d 457, ¶ 1; *Kruse*, 296 Wis. 2d 130, ¶ 2.

¶ 30. In *Combs*, we determined that the petitioner's expert's opinion was insufficient to entitle the petitioner to a discharge hearing because the expert's opinion was not based on: (1) any changes in the petitioner's behavior since the initial commitment hearing, *id.*, 295 Wis. 2d 457, ¶ 26; (2) any new method of evaluating whether the petitioner "was a sexually violent person that was not available at the time of the commitment [hearing]," *id.*; or (3) new research or professional writings on how to interpret or score the

actuarial instruments, *id.*, ¶ 27. Moreover, while the expert did consider the petitioner's progress in treatment, a new fact, the expert explicitly stated that the petitioner's treatment progress was not a basis for her conclusion that the petitioner was not a sexually violent person. *Id.*, ¶ 26.

¶ 31. As such, we determined in *Combs* that the petitioner's expert's opinion was "new" only in the sense that she was not one of the experts who evaluated the petitioner at the time of his initial commitment hearing. *Id.*, ¶ 27. We held that WIS. STAT. § 980.09(2) required the petitioner to show "*something more* than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent" before the circuit court was required to hold a discharge hearing. *Combs*, 295 Wis. 2d 457, ¶ 32 (emphasis added).

¶ 32. We held similarly in *Kruse*, relying on *Combs*, that the petitioner was not entitled to a discharge hearing because his expert's opinion "d[id] not, as required by *Combs*, depend on any fact or professional knowledge or research that was not considered by experts testifying at the commitment [hearing]." *Kruse*, 296 Wis. 2d 130, ¶ 42. We noted that although the expert did "take into account events and information that occurred since the commitment [hearing], . . . her opinion that [the petitioner] is not a sexually violent person does not depend upon them. She expressly states that it is 'unlikely' that treatment had 'significantly reduced reoffending risks.'" *Id.*, ¶ 41. Furthermore, while the expert noted that since entering treatment the petitioner "showed some increased insight and remorse, and his behavior with female staff had 'seemingly improved . . . ,' [the expert] d[id] not

indicate that her opinion that [the petitioner] [wa]s not a sexually violent person [wa]s based in any part on these apparent improvements." *Id.*

¶ 33. Schulpius dismisses both *Combs* and *Kruse*, arguing that they are no longer good law because they arose under the old "probable cause" version of Wis. Stat. § 980.09(2) (2003–04). We disagree.

¶ 34. In *Arends*, the supreme court explicitly stated that *Kruse* and other pre-2006 Wis. Stat. ch. 980 cases are still applicable, stating: "Although these cases all applied the old 'probable cause' standard, their results would be the same under the new standard." *Arends*, 325 Wis. 2d 1, ¶ 39 n.21. So, not only is *Kruse* still applicable, but *Arends* expressly states that *Kruse*'s holding—that a report favorable to a petitioner "based solely on evidence that had already formed the basis for the denial of a previous discharge petition" is insufficient to form the basis for a new discharge hearing— still stands. *See Arends*, 325 Wis. 2d 1, ¶ 39 n.21.

¶ 35. Given the plain language of Wis. Stat. § 980.09(2) and the relevant case law, we hold that, when determining whether to hold a hearing on a petition for discharge, the circuit court must determine whether the petitioner has set forth new evidence, not considered by a prior trier of fact, from which a reasonable trier of fact could conclude that the petitioner does not meet the criteria for commitment as a sexually violent person. An expert's opinion that is not based on some new fact, new professional knowledge, or new research is not sufficient for a new discharge hearing under § 980.09(2). *See Combs*, 295 Wis. 2d 457, ¶ 32. This result is the only reasonable one. Permitting a new discharge hearing on evidence already determined insufficient by a prior trier of fact violates essential

principles of judicial administration and efficiency. We are to avoid absurd or unreasonable results in statutory construction. *See State v. Delaney*, 2003 WI 9, ¶ 15, 259 Wis. 2d 77, 658 N.W.2d 416.

**II. Schulpius is not entitled to a Wis. Stat. § 980.09(2) discharge hearing because the expert's new opinion was not based on new facts, new professional knowledge, or new research.**

¶ 36. As we have seen, in order to be entitled to a discharge hearing, the petition materials must show new evidence—new fact, new professional knowledge, or new research—not considered by a prior trier of fact, upon which a reasonable trier of fact could conclude that the petitioner currently does not qualify for commitment under Wis. Stat. ch. 980. As such, we review whether Schulpius has raised new evidence in his August 2010 petition for discharge, such that a reasonable trier of fact could conclude that his condition had changed since the January 2010 discharge hearing.

¶ 37. Schulpius based his August 2010 petition for discharge on the fact that the State's expert, Dr. Barahal, had changed his opinion since he testified in January 2010. At the January 2010 discharge hearing, Dr. Barahal testified that he was "not sure" if Schulpius fit the criteria for a sexually violent person. In his July 2010 re-examination report, Dr. Barahal affirmatively stated that he believed that Schulpius no longer met the criteria for commitment. Schulpius argues that Dr. Barahal based his new opinion on: (1) Schulpius's new, lower score on the Static-99R, from a six to a five;

and (2) Schulpius's treatment progress, moving from the corrective-thinking treatment track to the conventional track.

¶ 38. The State argues that Dr. Barahal's July 2010 opinion is essentially the same as his testimony at the January 2010 hearing. There is no dispute that at the January 2010 hearing Dr. Barahal testified that he was "not sure" if Schulpius met the legal test of "more likely than not he would engage in future acts of sexual violence" and that Schulpius was "in a category which probably approaches 50 percent [to reoffend], but may or may not be above that." In his July 2010 report, Dr. Barahal still opined that Schulpius's "probability of committing another sexually violent act approaches, but is not clearly above or beneath 50%," but in July 2010, Dr. Barahal added that "Schulpius'[s] degree of risk does not meet the legal criterion . . . required for continued civil commitment." Despite Dr. Barahal's changed opinion from "not sure," to "sure," the State argues that his July 2010 report does not support the request for a discharge hearing because there was no real change, and even if there was, the changed opinion was not based on or linked to any change in Schulpius himself, or any new professional knowledge or new research. *See Combs*, 295 Wis. 2d 457, ¶ 32.

¶ 39. We agree with Schulpius that Dr. Barahal's July 2010 re-examination report expresses a new opinion, different from the one he testified to at the January 2010 discharge hearing. But we agree with the State that our inquiry does not end there. Whether a changed expert opinion is enough for a discharge hearing depends on the *basis* for the change, that is, the new "opinion must depend upon something more than facts, professional knowledge, or research that was consid-

370

ered by an expert testifying in a prior proceeding." *Id.*, ¶ 32. As we stated in *Combs*:

> By way of example, an opinion that a person is not sexually violent based at least in part on facts about the committed person that did not occur until after the prior adjudication would meet this standard, as would an opinion based at least in part on new professional knowledge about how to predict dangerousness.

*Id.*

¶ 40. Despite Schulpius's arguments to the contrary, Dr. Barahal's July 2010 report is not based on any new fact about Schulpius, new professional knowledge, or new research. Rather, Dr. Barahal bases his new opinion on his recalculation of Schulpius's Static-99 score, from a six to a five.

¶ 41. In his July 2010 report, Dr. Barahal explained that he lowered Schulpius's score on the Static-99R, from a six in January to a five in July, because upon further reflection, he felt that in his earlier report he had erroneously "considered the victim of [Schulpius's] 1991 index offense a stranger . . ., which would add a scoring point," when in fact Schulpius had "met the child, the son of a female friend, about a month prior to the assault." Dr. Barahal's further reflection on his past scoring is not sufficient for a new discharge hearing because it is not new professional knowledge or research about how to predict dangerousness. *See id.*

¶ 42. Furthermore, nowhere in his report does Dr. Barahal state that the basis for his new opinion was Schulpius's treatment progress. It is true that Dr. Barahal refers to Schulpius's treatment progress in the body of his report, noting that: "Schulpius was returned to the more 'conventional' treatment track just last December, and while he is seen as progressing well,

without further complications, he remains in early-to-intermediate treatment phases, working on tasks common to both 'Phase I' and introductory 'Phase II.' " But Dr. Barahal does not link his new opinion to Schulpius's treatment progress. In fact, Dr. Barahal's ultimate conclusion is that Schulpius "does not meet criteria for supervised release," which criteria he defines as "significant progress in treatment." If Schulpius's treatment progress was not sufficient for supervised release, it can hardly be the basis for Dr. Barahal's conclusion that Schulpius merits discharge.

¶ 43. Thus, we conclude that Dr. Barahal's July 2010 opinion—that Schulpius no longer meets the criteria of a sexually violent person—is not based on new fact, new professional knowledge, or new research, but rather a recalculation of the Static-99. Accordingly, the report sets forth an insufficient basis for a new discharge hearing. *See Combs*, 295 Wis. 2d 457, ¶ 32. We affirm.

*By the Court.*—Order affirmed.