In re the commitment of Herbert O. Richard:

STATE of Wisconsin, Petitioner-Respondent,

v.

Herbert O. RICHARD, Respondent-Appellant.

Court of Appeals

*No. 2012AP2748. Submitted on briefs September 17, 2013.
—Decided February 19, 2014.*

2014 WI App 28

(Also reported in 844 N.W.2d 370.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven D. Grunder*, assistant state public defender, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Christine A. Remington*, assistant attorney general.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1 MANGERSON, J. This case requires us to determine under what circumstances a petitioner com-

mitted under WIS. STAT. ch. 980[1] is entitled to a discharge hearing based on amendments to an actuarial instrument[2] used at trial that, in an evaluating expert's opinion, reduce the petitioner's risk to reoffend below the legal threshold of "more likely than not." We conclude that when a petitioner alleges that he or she is no longer a sexually violent person, and supports his or her petition with a recent psychological evaluation applying new professional research to conclude that the petitioner is no longer likely to commit acts of sexual violence, the petitioner is entitled to a discharge hearing under WIS. STAT. § 980.09. Because the circuit court denied Richard a hearing under those circumstances, we reverse and remand.

## BACKGROUND

¶ 2. Richard, who is now fifty-six years old, was committed as a sexually violent person in 2008. The basic facts regarding Richard's commitment were set forth in a previous appeal from the denial of a discharge petition, which we reproduce here:

> Richard has a long history of committing sexual assault. In 1977 he was convicted of fourth-degree sexual assault after he snuck into a woman's bedroom and attempted to rape her. Six years later he was convicted of false imprisonment of a ten-year-old girl. Richard stipulated that the victim did not report that she was

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] Actuarial instruments are "statistical research-based instruments that are created using data obtained by studying various factors associated with recidivism in groups of people who were convicted for sexual offenses, released, and followed over time." *State v. Combs*, 2006 WI App 137, ¶ 4, 295 Wis. 2d 457, 720 N.W.2d 684.

also sexually assaulted by Richard because Richard threatened to kill her father if she reported the assault. In 1986, after Richard had escaped from prison, he abducted and sexually assaulted a nine-year-old girl. Richard was subsequently convicted of first-degree sexual assault and sentenced to two thirty-year prison terms.

As Richard's mandatory prison release date approached, the State filed a WIS. STAT. ch. 980 petition to have Richard committed as a sexually violent person. In a ch. 980 proceeding, the State must prove beyond a reasonable doubt that the offender is a sexually violent person. WIS. STAT. § 980.05(3). " 'Sexually violent person' means a person who has been convicted of a sexually violent offense . . . and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." WIS. STAT. § 980.01(7). "Likely" means "more likely than not," which means that the offender is more than 50% likely to commit another sexually violent offense. *State v. Smalley*, 2007 WI App 219, ¶¶ 3, 10, 305 Wis. 2d 709, 741 N.W.2d 286.

At Richard's WIS. STAT. ch. 980 trial, two psychologists —Janet Hill and Richard Elwood—testified that Richard is a pedophile with personality disorder. Hill also diagnosed Richard with "paraphilia." Both psychologists reached the conclusion that Richard was more likely than not to commit another act of sexual violence.

Hill and Elwood each utilized three actuarial tests to assess whether Richard was likely to commit another act of sexual violence. The first test that Hill administered was the Rapid Risk Assessment of Sex Offense Recidivism test (RRASOR), which Richard scored a three on. Hill testified that of the individuals who score a three on this test, 47% of them are reconvicted of another sexually violent offense within seventeen years. Additionally, Hill administered a Static–99 test

to Richard. Richard scored an eight on this test. Hill testified that the developers of the Static–99 test lump all individuals who score between six and ten into the same risk category, and that 52% of the members in this cohort were reconvicted of another sexual offense within fifteen years. Finally, Hill administered a Minnesota Sex Offender Screening Tool—Revised test (Mn-SOST–R). Richard scored a twelve on this test, and Hill testified that 54% of sex offenders who scored between eight and twelve were rearrested for another sexual offense within six years. [Hill also suggested that by doubling the five-year recidivism rate, one could predict the individual's lifetime risk.] Elwood also gave Richard the same scores on the RRASOR, Static–99, and Mn-SOST–R tests.

In addition to the actuarial tests, the psychologists relied on other factors as well in reaching their conclusion that Richard was more likely than not to commit another act of sexual violence. For example, Elwood noted that Richard was a sexual deviant, that he previously violated the terms of his supervision, that he did not complete sex offender treatment, and that Richard's last crime was an impulsive act. Hill looked at other factors as well.

A jury subsequently found that Richard was a sexually violent person and the circuit court entered an order committing Richard to the Department of Health and Family Services for control, care, and treatment until Richard is no longer a sexually violent person.

In October 2009, Richard filed a petition for discharge on the grounds that his condition changed and that he was no longer a sexually violent person. The basis for Richard's petition was a research paper written by the developers of the Static–99 test arguing that the test should be revised to reflect the lower probability of older sex offenders committing another offense. Under the new scoring system, Richard alleges that he would score a seven instead of an eight on the Static–99 test,

224

and that the likelihood of him committing another sexually violent offense, according to the revised test, would decrease.

*State v. Richard*, 2011 WI App 66, ¶¶ 2–8, 333 Wis. 2d 708, 799 N.W.2d 509.

¶ 3. We concluded Richard's petition did not provide any facts from which a trier of fact could conclude he was no longer a sexually violent person, and was properly denied after a "paper review" by the circuit court. *Id.*, ¶¶ 11, 13–14. Richard's petition did not allege any new historical facts, and the report recommending changes to the Static–99 scoring model was "unassociated with his specific condition." *Id.*, ¶ 13. We also determined that, absent a new psychological evaluation applying the new Static–99 norms, relief was unavailable pursuant to *State v. Pocan*, 2003 WI App 233, 267 Wis. 2d 953, 671 N.W.2d 860, and *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684. *Richard*, 333 Wis. 2d 708, ¶¶ 16–19.

¶ 4. Meanwhile, Dr. Lori Pierquet filed an annual progress report in May 2010.[3] She, like Hill and Elwood, scored Richard a three on the RRASOR and an eight on the Static–99. Pierquet also performed the Static–99R, a revised test, scoring Richard a seven. Pierquet stated offenders with similar scores in a "high risk/high needs" subsample were reconvicted of sexual offenses at a rate of 37.9% after five years and 48.6% at ten years.[4]

---

[3] Richard declined to be interviewed for the report.

[4] Pierquet explained that all sex offenders begin in an overall "routine" group. However, if an offender can be matched on relevant factors to a subsample composed of offenders most like him or her, the psychologist can give a more accurate risk assessment. The "high risk/high need" subsample is a group of offenders identified as having a higher risk and higher needs than other subsamples of offenders.

Pierquet concluded that Richard was more likely than not to commit another sexually violent offense should he be discharged.

¶ 5. Richard filed a second discharge petition after receiving Pierquet's report. Doctor James Peterson was appointed by the court to conduct an evaluation. Peterson reported that, subsequent to Richard's commitment, the Static–99 had been revised when it was discovered that recidivism decreased with age. In addition, because recidivism rates had declined, "the old Static–99 norms consistently over-predicted recidivism and are now considered obsolete." On the revised test, the Static–99R, Peterson scored Richard a six. Peterson stated the difference between this score and Richard's score on earlier tests was "accounted for by a one-point age adjustment and the discovery of an apparent error in the original scoring by Dr. Janet Hill, with the error being carried on by subsequent evaluators."[5] A score of six corresponds with a probability of re-offense between 28% and 42% within ten years. Nonetheless, Peterson opined that Richard did not qualify for discharge. Richard's petition was denied, and he did not appeal.

¶ 6. Richard filed his third petition for discharge in 2012, this time supporting the petition with an evaluation report by psychologist Hollida Wakefield. Wakefield evaluated Richard using only the Static–99R; she did not use the MnSOST–R because its authors

---

[5] Peterson reported that Richard was incorrectly scored on the item assigning zero points for individuals who have had a long-term, intimate relationship of two years or more, and one point for individuals who have not had such a relationship. Peterson stated that Richard was married and cohabitated with his wife for more than three years, so the correct score was zero rather than one assigned by Hill. Although Pierquet adjusted the Static–99R score by one to account for Richard's age, she perpetuated Hill's original scoring error.

"provided no current recidivism data," nor did she use the RRASOR because the four items in that test were incorporated in the Static–99R.[6] Wakefield scored Richard a six on the Static–99R, which she considered high.

¶ 7. Wakefield assessed Richard's likelihood of reoffending at between 15% and 40% based on his Static–99R score. She cited 2010 research concluding sexually violent persons should be compared to the "routine" group, who reoffended at a 15% rate at both five and ten years. She reported that if Richard were compared with the "high risk/high need" subsample, re-offense rates increased to 31% after five years, and 42% after ten years. However, Wakefield stated that the practice among some practitioners of automatically placing all sexually violent persons in the "high risk/high needs" subsample is "controversial and hasn't been peer reviewed." She concluded that, given Richard's low psychopathy score and his good behavior while incarcerated, Richard was "more similar to the routine group." Ultimately, Wakefield opined that, given the "new, lower recidivism risk tables," Richard was not likely to reoffend and was a suitable candidate for discharge.[7] She made several supervision recommenda-

---

[6] At trial, Elwood also testified that the RRASOR has been generally replaced by the Static–99.

[7] Wakefield also opined that Richard does not have a mental disorder that predisposes him to commit future acts of sexual violence; instead, noting that all of Richard's crimes occurred while he was intoxicated, Wakefield diagnosed him with alcohol dependence and cannabis abuse, both in full remission in a controlled environment. On appeal, Richard does not assert he is entitled to be discharged because he no longer has a mental disorder, and we deem the issue to have been abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

tions should he be discharged, including complete abstinence from alcohol and drugs.

¶ 8. Doctors Pierquet and Merrick re-evaluated Richards for the State. Pierquet again scored Richard at eight on the Static–99, and at seven on the Static–99R. She used the same methodology as before and came to the same conclusion: that Richard was more likely than not to reoffend and was still a sexually violent person. Merrick scored Richard at eight on the Static–99, which represented a recidivism rate of "about 49%" after ten years using the total sample. He declined to administer the Static–99R, and recommended against discharge.

¶ 9. The circuit court held a hearing to determine the sufficiency of Richard's discharge petition. It took no evidence, but requested argument from the attorneys. Richard's counsel argued a discharge hearing was appropriate because Wakefield applied new research indicating that Richard represented a lower risk to reoffend than previously believed, and fell below the legal threshold for commitment. The State argued there were no new historical facts in Richard's case, and suggested that a discharge hearing would be contrary to public policy.[8]

¶ 10. Acknowledging it was a "somewhat close decision," the circuit court denied Richard's petition without an evidentiary hearing. The court concluded Wakefield's report was insufficient because "she's relying upon the same facts that everybody else relied upon to reach a different conclusion and I think we need some new facts here beside just her evaluation." Richard appeals.

---

[8] Several times, counsel for the State argued that "if we granted everyone a new trial because a new actuarial came around, we would be doing it every day."

## DISCUSSION

¶ 11. The procedure and standards governing discharge petitions are laid out in Wis. Stat. ch. 980, which underwent significant revision in 2006. "Probable cause hearings," referenced in earlier cases, were replaced with "a two-step process similarly aimed at weeding out meritless and unsupported petitions, while still protecting a petitioner's access to a discharge hearing. *State v. Arends*, 2010 WI 46, ¶ 22, 325 Wis. 2d 1, 784 N.W.2d 513.

¶ 12. Under the current statutory scheme, the court first engages in an initial, or "paper," review of the discharge petition and its attachments. *Id.*, ¶ 25 (citing Wis. Stat. § 980.09(1)). The court must determine whether "a reasonable trier of fact could conclude from the facts alleged in the petition and its attachments that the petitioner does not meet the criteria for commitment as a sexually violent person." *Id.*, ¶ 27; *see also* Wis. Stat. § 980.09(1).[9] Typically, the petition will allege that the committed person does not have a mental disorder that predisposes him or her to acts of sexual violence, and/or the committed person is not more likely than not to commit a sexual offense. *Arends*, 325 Wis. 2d 1, ¶ 25.

¶ 13. If the petition is facially sufficient, the court proceeds to a review under Wis. Stat. § 980.09(2), which is a second level of review before the petitioner is entitled to a discharge hearing. *Arends*, 325 Wis. 2d 1,

[9] Wisconsin Stat. § 980.09 has since been amended. The statute now requires the court to deny the petition if it does not contain facts from which the court or jury "would likely conclude" the person is no longer sexually violent. 2013 Wis. Act 84, §§ 21, 23.

¶¶ 30, 32. In this step, the court must examine the record *in toto,* including any current or past examination reports or treatment progress reports, the petition and any written response, the arguments of counsel, and any other documentation filed by either party. *Id.,* ¶ 38. The standard is the same as the facial review under § 980.09(1); that is, the court must determine whether there are facts from which a reasonable trier of fact could conclude that the petitioner does not meet the criteria for commitment. *See* Wis. Stat. § 980.09(2). The court may hold a hearing at this stage, or order the production of any enumerated items not in the record. *Arends,* 325 Wis. 2d 1, ¶ 33. "Essentially, review under § 980.09(2) ensures that the claims in the petition are supported with actual facts." *Id.,* ¶ 38.

¶ 14. Here, it is apparent the circuit court found Richard's petition facially sufficient, as it held a hearing on the petition under Wis. Stat. § 980.09(2).[10] We agree that Richard's petition was sufficient to proceed to the

---

[10] As our supreme court explained in *State v. Arends,* 2010 WI 46, ¶ 48 n.24, 325 Wis. 2d 1, 784 N.W.2d 513, a trial court need not issue an order explaining its rationale if a petitioner satisfies the requirements of Wis. Stat. § 980.01(1). Instead, the preferred procedure is for trial judges to "proceed seamlessly from a § 980.09(1) review to a § 980.09(2) review without notice to the parties." *Id.*

Richard contends his petition did not get past the "paper review" stage because the circuit court did not examine the entire record. We cannot agree because the court held a hearing. Wisconsin Stat. § 980.09(1) states that if the paper review discloses no facts upon which a reasonable fact-finder could rely to find the petitioner no longer a sexually violent person, the court must deny the petition without a hearing. Because the court held a hearing, it must have proceeded to second-level review under § 980.09(2).

That being said, it does not appear the circuit court considered the record *in toto,* as required by Wis. Stat.

second step of review. *See Arends*, 325 Wis. 2d 1, ¶ 48 n.24 (§ 980.09(1) is satisfied where petitioner alleged that psychologist's report supported his claim that he was no longer more likely than not to sexually reoffend, and report did in fact reach that conclusion). Richard's petition alleged that a "new instrument [the Static–99R] used in determining risk to reoffend has been developed since [Richard's] original commitment trial." Richard represented that his score under the new instrument is a six. According to risk tables developed by the authors, 15% of "routine" offenders with that score re-offended after ten years, while "high risk/high needs" offenders with that score recidivated at a rate of 31% at five years and 42% at ten years. Wakefield's report confirmed these facts and opined that Richard was more comparable to the "routine" group. Wakefield's report concluded that Richard was no longer a sexually violent person.

¶ 15. Despite finding Richard's petition facially sufficient, the circuit court concluded after the hearing that Richard failed to allege facts from which a reasonable fact-finder could conclude he was no longer a sexually violent person. These conclusions seem somewhat incongruous, a circumstance Justice Prosser pointed out several years ago. *See id.*, ¶ 64 (Prosser, J., dissenting) ("The real question here is whether a facially sufficient petition can be successfully rebutted in the optional hearing or in the court's consideration of other matters, including argument."). The circuit court appears to have believed Richard's petition alleged nothing "new." That is, it reasoned that the historical facts upon which Richard was committed had not

§ 980.09(2). The court did not indicate it had reviewed Richard's past evaluations. We could reverse on this basis alone. *See Arends*, 325 Wis. 2d 1, ¶ 45.

changed, and one psychologist's conclusion to the contrary, drawn from those same facts, was insufficient to justify a discharge hearing.

¶ 16. On the one hand, we understand the concern for finality. The State should not be required to continuously litigate the issue of a petitioner's status as a sexually violent person simply because there are conflicting expert opinions on that point. *See Combs*, 295 Wis. 2d 457, ¶ 29. Accordingly, the rule is that an expert opinion based solely on facts or professional knowledge or research considered by the experts who testified at the commitment trial is insufficient to warrant a discharge hearing. *Id.*, ¶ 35. A petition supported by such an opinion would be meritless, and may be properly dismissed upon second-level review. *See Arends*, 325 Wis. 2d 1, ¶ 39 n.21.

¶ 17. On the other hand, a petitioner's right to a discharge hearing under the appropriate circumstances is a critical factor in the constitutional validity of Wis. Stat. ch. 980. *See Combs*, 295 Wis. 2d 457, ¶ 28 (citing *State v. Post*, 197 Wis. 2d 279, 307 n.14, 313–16, 325–27, 541 N.W.2d 115 (1995)). The statutory scheme must offer an ample and fair opportunity to petition for release. *Post*, 197 Wis. 2d at 326. When a petitioner alleges he or she is no longer a sexually violent person and presents an expert report supporting that allegation, before the circuit court denies the petition under *Combs*, it must carefully scrutinize the expert's opinion to ensure that it is firmly rooted in facts, professional knowledge, and research that has already been presented to a fact-finder. *See Combs*, 295 Wis. 2d 457, ¶ 33 (recognizing that the *Combs* standard "does not offer a simple, bright line").

¶ 18. In determining whether Richard's third petition entitles him to a discharge hearing, we are mindful that his first petition was denied because he failed to support it with a new psychological evaluation. In his previous appeal, we concluded Richard's petition was insufficient because he merely cited a research paper written by the developers of the Static–99 arguing the test should be revised to reflect the lower probability of older sex offenders committing another offense. *Richard*, 333 Wis. 2d 708, ¶¶ 7, 13–14. That paper, standing alone, provided "no insights into Richard's likelihood of reoffending." *Id.*, ¶ 13. By contrast, Hill and Elwood testified at trial that, based on their assessment of dynamic factors and actuarial instruments, Richard specifically was more likely than not to commit another act of sexual violence. *Id.*, ¶¶ 5, 14.

█

¶ 19. Richard, in his previous appeal, also asserted he was entitled to a discharge hearing pursuant to *Pocan* and *Combs*, an argument we similarly rejected because Richard had not undergone a new psychological examination. In *Pocan*, 267 Wis. 2d 953, ¶ 4, a psychologist, using actuarial tables that were not available when Pocan was originally committed, opined that Pocan was no longer a sexually violent person. We concluded Pocan was entitled to a probable cause hearing based on this information. *Id.*, ¶¶ 12–14. Thus, *Pocan* holds that "probable cause to believe a person is 'no longer . . . sexually violent' may be established by a method professionals use to evaluate whether a person is sexually violent that was not available at the time of the prior examination . . . ." *Combs*, 295 Wis. 2d 457, ¶ 25. In *Combs*, we determined the circuit court properly dismissed the discharge petition because the

expert's supporting opinion was not based on new research or professional writings on how to interpret or score actuarial instruments. *Id.*, ¶ 27. "Rather, [the expert's] opinion is 'new' only in the sense that she is not one of the experts who has previously evaluated Combs using these instruments and, thus, her interpretation and scoring—reflecting her individual professional judgment—has not occurred before." *Id.*

██ ██

¶ 20. Based on these authorities—*Pocan, Combs,* and *Richard*—we conclude Richard is entitled to a discharge hearing under WIS. STAT. § 980.09. To summarize, a petition alleging a change in a sexually violent person's status based upon a change in the research or writings on how professionals are to interpret and score actuarial instruments is sufficient for a petitioner to receive a discharge hearing, if it is properly supported by a psychological evaluation applying the new research. *See Richard,* 333 Wis. 2d 708, ¶¶ 13–14, 17, 19; *Combs,* 295 Wis. 2d 457, ¶¶ 25, 27, 32; *Pocan,* 267 Wis. 2d 953, ¶ 12. Richard's petition meets these requirements.[11]

---

[11] *State v. Schulpius,* 2012 WI App 134, 345 Wis. 2d 351, 825 N.W.2d 311, *review denied,* 2013 WI 80, 839 N.W.2d 616, is distinguishable. In that case, a reviewing doctor changed his opinion that Schulpius was still dangerous based on changes to the Static–99 scoring. *Id.*, ¶ 10. The doctor concluded Schulpius was no longer more likely than not to commit acts of sexual violence. *Id.* In a subsequent report, the doctor was equivocal about whether Schulpius was still dangerous, and stated he could not offer a specific recommendation regarding discharge. *Id.*, ¶ 11. This information was presented to a jury at a discharge hearing, which found Schulpius was still a sexually violent person. *Id.*, ¶ 14. When the doctor filed another report indicating he had erroneously scored Schulpius and opining that Schulpius was no longer a sexually violent person,

¶ 21. The State argues that portions of the research on which Wakefield relies were in existence prior to Richard's trial. The State specifically points to one 2007 study. While the data may have been conceptually "in existence" at the time of Richard's 2008 commitment trial, the State concedes Wakefield relied on a paper that was not published until afterward, in 2009. To the extent the State implies the 2009 paper was simply a regurgitation of the 2007 study, it does not support this assertion with any sort of analysis, and we need not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (declining to review inadequately briefed issues).

¶ 22. The State also contends that relief is unavailable to Richard because at trial Hill and Elwood briefly discussed then-recent data suggesting that recidivism decreases with age. Hill, though, was unaware of the details of the study and stated she did not know how advancing age affected recidivism rates. Elwood testified the re-offense rates in the new research "closely approximate those of the original RRASOR and Static studies," a statement which, at least in part, seems to be no longer true.

---

Schulpius filed another discharge petition. *Id.*, ¶¶ 16, 19. However, we held this change in scoring was insufficient to entitle Schulpius to a discharge hearing under *State v. Combs*, 2006 WI App 137, 295 Wis. 2d 457, 720 N.W.2d 684, and *State v. Kruse*, 2006 WI App 179, 296 Wis. 2d 130, 722 N.W.2d 742, because the scoring change was not based on any new facts about Schulpius, new professional knowledge, or new research. *Schulpius*, 345 Wis. 2d 351, ¶ 40. Rather, the change was simply a result of the doctor's further reflection on one of the scoring criteria. *Id.*, ¶ 41. Unlike the jury in *Schulpius*, no fact-finder here has had an opportunity to consider the changes in professional research that allegedly reduce Richard's risk to reoffend.

¶ 23. In any event, we are unpersuaded by the State's piecemeal approach. The State does not tackle Richard's broader contention that, at the time of his commitment trial, the Static–99 scoring tables had not yet been adjusted to reflect new research about the effect of aging on recidivism. *See Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶ 9, 232 Wis. 2d 53, 606 N.W.2d 590 (WI App 1999) (unrefuted arguments are deemed conceded). Indeed, Pierquet, the State's own psychologist, stated in her April 2011 reevaluation report that the tables were first presented at an academic conference in September 2009, and publication in a peer-reviewed journal had not yet been accomplished.

¶ 24. Even if we endorsed the State's approach of questioning selected research materials on which Wakefield relied, that leaves plenty of her opinions intact. For example, the State does not challenge Wakefield's opinion that it is improper to compare Richard to the "high risk/high needs" group.[12] Nor does it challenge Wakefield's opinion that it is improper to "extrapolate [Richard's] lifetime risk beyond the 10–year sexual reconviction rate by doubling the 5–year rate or by any other formula," contrary to Hill's testimony at trial.

¶ 25. The State also observes that "only one of the three actuarials testified to at trial has been amended. The RRASOR and the MnSOST-R are not affected by any new research relied upon by Wakefield." Regardless

---

[12] The State asserts that Wakefield's opinion on this point should not be considered because she failed to provide a citation to a journal or other publication. The State implies that it could not know whether the research was "new" without that information. However, the State did not raise the issue of improper citation before the circuit court when it had the opportunity to do so, and we will not address it for the first time on appeal. *See State v. Holland Plastics Co.*, 111 Wis. 2d 497, 504, 331 N.W.2d 320 (1983).

of whether those statements are true, they ignore the standard under WIS. STAT. § 980.09(2). A court must determine whether the petition and record "contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person." *Id.* In Richard's case, we conclude this standard is satisfied when a psychologist reports that significant amendments to one of the actuarial instruments used at trial reduce the petitioner's risk to reoffend below the legal threshold. We therefore remand to the circuit court so that it may hold a discharge hearing.

*By the Court.*—Order reversed and cause remanded with directions.