IN RE the COMMITMENT OF David HAGER, Jr.:
STATE of Wisconsin, Petitioner-Respondent,†

v.

David HAGER, Jr., Respondent-Appellant.

Court of Appeals

*No. 2015AP330. Oral argument September 7, 2016.
—Decided January 24, 2017.*

2017 WI App 8

(Also reported in 892 N.W.2d 740.)

† Petition for Review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of and oral argument by *Andrew R. Hinkel*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Sara Lynn Shaeffer*, assistant attorney general, and *Brad D. Schimel*, attorney general. There was oral argument by *Donald V. Latorraca*, assistant attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. David Hager, Jr., appeals an order denying without a trial his 2014 petition seeking discharge from his Wis. Stat. ch. 980 commitment as a "sexually violent person."[1] Hager also appeals the order denying his motion for reconsideration.

¶ 2. Hager and the State dispute the effects of certain amendments to the discharge statute, Wis. Stat. § 980.09, enacted as part of a legislative overhaul of ch. 980 in 2013. *See generally* 2013 Wis. Act 84 (hereinafter, "Act 84"). Act 84 changed the standards under both § 980.09(1) and (2) for the circuit court's determination of whether a petitioner will receive a discharge trial. Those subsections now require the court to determine whether, at an ensuing discharge trial, a factfinder "would likely conclude" the petitioner no longer meets the criteria for commitment as a sexually violent person. The previous "may conclude" standard required the court to determine whether it was merely possible for the factfinder to conclude as such.

¶ 3. At oral argument in this case, the parties generally agreed the legislature's substitution of a "would likely conclude" standard for the former "may conclude" standard accomplished a material increase in the burden of production necessary to obtain a discharge trial under both levels of review in Wis. Stat. § 980.09(1) and (2). However, the State also argues the amendments to § 980.09(2) now require the circuit court to weigh the facts in support of the petition against facts unfavorable to the petition in ascertaining whether a factfinder would likely conclude dis-

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

charge is required. The State argues the amendments to § 980.09(2) effectively abrogated *State v. Arends*, 2010 WI 46, 325 Wis. 2d 1, 784 N.W.2d 513.

¶ 4. We disagree and conclude the process set forth in *Arends* largely remains good law. The changes to WIS. STAT. § 980.09(2) as a whole do not permit circuit courts to "weigh" the evidence favorable to the petition against the evidence unfavorable to it. Rather, the amendments clarify the statute so as to reflect judicial interpretations of the statutory language since the last major revisions in 2006. At the same time, the amendments undisputedly increase the petitioner's burden of production to convince a circuit court that all evidence within the record favorable to the petitioner, including those facts submitted with the petition, establishes a reasonable likelihood of success at a discharge trial.

¶ 5. Applying this interpretation of WIS. STAT. § 980.09(2) to Hager's petition and the facts of record, we conclude the circuit court erred as a matter of law in failing to set the matter of Hager's discharge for trial. The petition was supported by an expert report applying two actuarial risk instruments that were not available at the time of Hager's initial commitment trial. This new research, combined with changes the expert observed in Hager following his commitment, led this expert to conclude that Hager's lifetime risk of committing another sexually violent offense fell below the requisite fifty percent threshold. This evidence, considered in light of the facts of record, was evidence from which a factfinder "would likely conclude" Hager no longer qualified as a "sexually violent person" under WIS. STAT. ch. 980. We therefore remand for the circuit court to hold a discharge trial in accordance with § 980.09(3) through (5), at which a jury will determine

whether Hager no longer meets the criteria to be civilly committed under WIS. STAT. ch. 980.

## BACKGROUND

¶ 6. Hager was convicted in 1995 of three counts of incest with a child. He was civilly committed as a sexually violent person on September 17, 2008, following a jury trial. At the commitment trial, Dr. Christopher Tyre testified as the State's expert psychologist, while Dr. Robert Barahal testified on Hager's behalf.

¶ 7. Doctor Tyre evaluated Hager in 2004 and 2007. He diagnosed Hager with paraphilia, not otherwise specified, and a personality disorder, not otherwise specified, the latter with antisocial and borderline features.[2] Tyre concluded these disorders predisposed Hager to commit acts of sexual violence. Tyre also concluded Hager was more likely than not to commit a future act of sexual violence. Tyre based this opinion in part on Hager's performance on three actuarial risk instruments, the RRASOR, the Static-99, and the MnSOST-R. Hager's scores on these instruments equated to a "high risk or medium high risk" when compared to their respective offender samples.

---

[2] Tyre testified paraphilia is a condition of "sexual interest outside what we consider normal" that features a long-term "pattern of intense, recurrent sexual fantasies, sexual urges or behaviors, that involves either non-human objects, harm or humiliation to oneself or one's partner, or children or other non-consenting persons." Tyre stated Hager's personality disorder had antisocial features given his history of aggression and general disregard for rules, with borderline features because of Hager's unstable self-image and history of self-harming behavior. Tyre explained the phrase "not otherwise specified" is used when the essential features of a disorder are present but "you can't specify further within that diagnostic category" or there are a "mixed pattern of features within that diagnostic category."

¶ 8. Doctor Barahal diagnosed Hager with pedophilia, which predisposed Hager to commit sexually violent acts, and also substance abuse and a learning disability. Like Tyre, Barahal evaluated Hager's reoffense risk using the RRASOR and Static-99 actuarial instruments. Barahal agreed that these instruments placed Hager in a high to medium-high risk category. However, Barahal did not believe there was sufficient evidence "to conclude either way" whether Hager's reoffense risk exceeded fifty percent.

¶ 9. Hager filed a petition for discharge each year from 2009 to 2011, each time voluntarily withdrawing the petition prior to receiving a discharge trial. Hager voluntarily withdrew his 2011 petition prior to a discharge trial despite the State's concession that his petition, together with the accompanying reexamination report by licensed psychologist Hollida Wakefield, was legally sufficient to warrant such a trial.[3] In 2012, Hager filed a pro se discharge petition, which the State opposed and which the circuit court denied as supported only by Hager's own self-evaluation.

¶ 10. Although he was represented by counsel at the time, Hager filed another pro se discharge petition on October 18, 2013. At Hager's attorney's request, the circuit court appointed Wakefield to conduct a psychological examination on Hager's behalf. Hager's counsel filed an amended discharge petition on February 27, 2014, which was supported by Wakefield's report.

¶ 11. In Wakefield's 2014 report, she concluded Hager's "risk for reoffending is below the level of risk required for commitment under Chapter 980." Wake-

[3] Wakefield opined in 2011, just as she did in 2014, that changes in the Static-99 risk tables indicated Hager was no longer more likely than not to commit a future sexually violent offense.

field diagnosed Hager with a pedophilic disorder that predisposed him to commit sexually violent offenses, but she opined that the disorder had "decreased" in the past several years.

¶ 12. Although Wakefield agreed actuarial risk assessments are more accurate than clinical judgment, she noted their limitations. For example, Wakefield noted the instruments do not permit a numerical calculation of a given individual's level of risk, but rather they inform only what risk group the person belongs to and the recidivism rate of that group. The actuarial instruments measure only static factors, such as criminal offense history, but an individual's dynamic factors may increase or decrease the probabilities associated with the group data.

¶ 13. Wakefield assessed Hager's reoffense risk using two actuarial instruments that the experts at his initial commitment trial had not used, the Static-99R and the MATS-1. According to Wakefield's report, the Static-99 underwent scoring revisions in 2009, with the resulting instrument being called the Static-99R. Wakefield reported the original Static-99 overestimated recidivism, and new risk tables were presented in the fall of 2008. Based on research published after the Static-99R was released, Wakefield criticized the Static-99R authors' recommendation that the scores of all offenders referred for commitment be evaluated against a "high risk/needs" subgroup. Wakefield, comparing Hager to the "routine" or "aggregate" group of sex offenders, noted that approximately fifteen to thirty percent of sex offenders with a score similar to Hager's sexually recidivated.

¶ 14. According to Wakefield, the MATS-1 was first published in December 2010. The MATS-1 instrument uses the offender's Static-99R score with the age

item removed, and then uses actual recidivism data from a group of over 9000 sex offenders to arrive at—in the MATS-1 authors' opinion—a better actuarial estimate of risk by accounting for the effect of age generally on recidivism. Wakefield reported that Hager is in the second age category (ages 40–49.9), and "his risk level on the MATS-1 is 25.5% (with a 95% confidence interval of 19% to 34%). This is similar to the 15% to 30% on the Static-99R."

¶ 15. In addition to changes in the actuarial instruments, Wakefield opined that certain dynamic factors further reduced Hager's reoffense risk since his initial commitment. Although pedophilic disorder tends to be chronic, Wakefield reported that deviant fantasies and behavior generally decrease with age and that Hager's current sexual fantasies are of age-appropriate women, with Hager passing a polygraph test on this issue. Hager was also able to fully suppress his responses to younger children, as measured by a penile plethysmograph. He also repudiated his past distorted attitudes about sexual entitlement and his belief that children enjoy sex with adults.

¶ 16. The State filed a response urging the circuit court to deny Hager's petition without holding a discharge trial. The State argued Act 84 had "fundamentally changed the standard for assessing a discharge petition's sufficiency." Whereas the previous standard required the circuit court to hold a discharge trial if there were facts from which the factfinder "may conclude" the person's condition had changed since his or her initial commitment, the State pointed out that the new standard required facts from which the factfinder "would likely conclude" the person's condition had changed. *Compare* Wis. Stat. § 980.09(1) and (2) (2005–06) *with* Wis. Stat. § 980.09(1) and (2). This

change, the State argued, "invariably" required the circuit court to "weigh the evidence in support and in opposition to the petition," thereby abrogating *Arends'* holding that no such weighing is to occur. *See Arends*, 325 Wis. 2d 1, ¶ 40. The State asserted that, under this standard, Hager's petition failed because the Static-99 recidivism rates were not "significantly different from the current Static-99R rates for high risk high needs persons."

¶ 17. The circuit court denied Hager's amended discharge petition following a non-evidentiary hearing. At the hearing, the court remarked that Hager was "still the same person he was." The court apparently accepted the State's argument that there was no real difference between the Static-99 and the Static-99R actuarial instruments, and stated it was "not satisfied there has been any change in the expert's knowledge of Mr. Hager or his offense." Hager filed a reconsideration motion, observing that the State was comparing the recidivism rates from the Static-99 and the Static-99R's high risk/needs subgroup, the use of which Wakefield had concluded was inappropriate. Hager also observed the court had not addressed Wakefield's use of the MATS-1. The circuit court denied the reconsideration motion. Hager appeals.

¶ 18. On February 2, 2016, we certified this case and *State v. Carter*, Appeal No. 2015AP1311, to the Wisconsin Supreme Court. Our certification asked the supreme court to "determine issues related to the effect of 2013 Wis. Act 84," including whether the amendments to WIS. STAT. § 980.09(1) and (2) authorized the circuit court to "weigh" the evidence, how such weighing was to be accomplished, and whether the amended statute was unconstitutional. The supreme court denied certification, and we ordered oral

argument. We now reverse the circuit court's determination regarding the sufficiency of Hager's petition. We remand for the court to hold a discharge trial, at which a jury will determine whether Hager no longer meets the criteria to be civilly committed as a "sexually violent person."

## DISCUSSION

¶ 19. This case concerns the interpretation of amendments to the statute governing a person's ability to receive a discharge trial from a WIS. STAT. ch. 980 commitment. A brief overview of the salient statutory framework is necessary to a full understanding of this issue. When a person convicted of a "sexually violent offense"[4] is nearing release from prison, the Wisconsin Department of Justice and each appropriate district attorney receives notice of the impending release. *Arreola v. State*, 199 Wis. 2d 426, 431, 544 N.W.2d 611 (Ct. App. 1996); *see also* WIS. STAT. § 980.015. The government may then file a court petition alleging the inmate is a "sexually violent person" requiring civil commitment. *Arreola*, 199 Wis. 2d at 431; *see also* WIS. STAT. § 980.02.

¶ 20. A "sexually violent person" is someone who, in addition to having been convicted of a sexually violent offense, is "dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." WIS. STAT. § 980.01(7). The subject of the petition has a right to a jury trial, WIS. STAT. § 980.03(3), and, upon a unanimous finding that the person is sexually violent, he or she is committed to the custody of the

[4] *See* WIS. STAT. § 980.01(6) (enumerating the qualifying offenses).

Wisconsin Department of Health Services "for control, care and treatment until such time as the person is no longer a sexually violent person," WIS. STAT. § 980.06.

¶ 21. A committed person is reexamined at least annually, WIS. STAT. § 980.07(1), and may petition for discharge at any time, WIS. STAT. § 980.09(1). The availability of an "ample and fair opportunity" to seek release from involuntary commitment under ch. 980 is an important facet of the statutes' constitutionality. *See State v. Post*, 197 Wis. 2d 279, 325–27, 541 N.W.2d 115 (1995); *State v. Combs*, 2006 WI App 137, ¶ 28, 295 Wis. 2d 457, 720 N.W.2d 684; *see also Kansas v. Hendricks*, 521 U.S. 346, 363–64 (1997) (possibility of indefinite duration under Kansas' Sexually Violent Predator Act did not render civil commitment scheme punitive in nature because duration of commitment was linked to the stated purposes of commitment). The legislature has long grappled with precisely how to provide this opportunity, but it has so far declined to shift the burden of proof to the petitioner to show that he or she is no longer a suitable candidate for commitment. *See, e.g., State v. Paulick*, 213 Wis. 2d 432, 437 & n.2, 570 N.W.2d 626 (Ct. App. 1997). Instead, the legislature has required that the petitioner make a preliminary showing warranting a full evidentiary hearing on the issue of discharge, at which hearing the State continues to carry the burden of proof—which burden is that of clear and convincing evidence. *See* WIS. STAT. § 980.09(3); *Arends*, 325 Wis. 2d 1, ¶ 35.

¶ 22. Initially, circuit courts were required to hold probable cause hearings under certain circumstances to ascertain whether facts existed to warrant a discharge hearing. *See* WIS. STAT. § 980.09(2)(a) (2003–04); *see also Arends*, 325 Wis. 2d 1, ¶¶ 18–22 (discussing the effect of the 2006 amendments to the previous statutory

scheme). In 2006, "the legislature replaced a mandatory probable cause hearing with a two-step process similarly aimed at weeding out meritless and unsupported petitions, while still protecting a petitioner's access to a discharge hearing." *Arends*, 325 Wis. 2d 1, ¶ 22; *see also* 2005 Wis. Act 434, § 123.

¶ 23. *Arends* held that the first step of the process, as mandated by WIS. STAT. § 980.09(1) (2005–2006), was "a very limited review aimed at ensuring the petition is sufficient."[5] *Arends*, 325 Wis. 2d 1, ¶ 28. This step involves the circuit court's paper review of only the petition and its attachments. *Id.*, ¶ 25. The court's task in a subsection (1) review was "to determine whether the facts alleged are those 'from which the court or jury *may conclude* the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.' " *Id.*, ¶ 26 (quoting § 980.09(1) (2005–06)) (emphasis added).

¶ 24. The *Arends* court analogized a WIS. STAT. § 980.09(1) (2005–06), review to a circuit court's review of a motion to dismiss for failure to state a claim upon which relief can be granted. *Arends*, 325 Wis. 2d 1, ¶ 29. "When reviewing such a motion, a court analogously considers only the facts alleged in the complaint and its attachments, and must assume that all those

---

[5] The 2005–06 version of WIS. STAT. § 980.09(1) provided, in full:

> A committed person may petition the committing court for discharge at any time. The court shall deny the petition under this section without a hearing unless the petition alleges facts from which the court or a jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.

alleged facts are true." *Id.* If the petition failed to allege sufficient facts to warrant discharge, the circuit court was required to deny the petition. *Id.*, ¶ 30; *see also* WIS. STAT. § 980.09(1) (2005–06). If the petition was facially sufficient, the court proceeded to a review under WIS. STAT. § 980.09(2) (2005–06).

¶ 25. WISCONSIN STAT. 980.09(2) (2005–06) contained "a second level of review before a petitioner [was] entitled to a discharge hearing."[6] *Arends*, 325 Wis. 2d 1, ¶ 32. This level of review focused on "whether the *record in toto,* including all reports, the petition and any written response, arguments of counsel, and any other documents submitted, contain [sic] facts that could support relief for the petitioner at a discharge hearing." *Id.*, ¶ 38. Subsection (2) allowed the circuit court to hold a separate hearing on this issue, distinct from and prior to any discharge trial. *See id.*, ¶ 33.

¶ 26. During this record review, the circuit court was not permitted to make credibility determinations or "weigh evidence favoring the petitioner directly against evidence disfavoring the petitioner." *Id.*, ¶¶ 37, 40.

---

[6] The 2005–06 version of WIS. STAT. § 980.09(2) provided, in full:

> The court shall review the petition within 30 days and may hold a hearing to determine if it contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person. In determining under this subsection whether facts exist that might warrant such a conclusion, the court shall consider any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state. If the court determines that the petition does not contain facts from which a court or jury may conclude that the person does not meet the criteria for commitment, the court shall deny the petition. If the court determines that facts exist from which a court or jury could conclude the person does not meet criteria for commitment the court shall set the matter for hearing.

> This is impermissible because the standard is not whether the evidence more heavily favors the petitioner, but whether the enumerated items contain facts that would allow a factfinder to grant relief for the petitioner. If the enumerated items do contain such facts, the presence of evidence unfavorable to the petitioner—a re-examination report reaching a conclusion that the petitioner was still more likely than not to sexually reoffend, for example—does not negate the favorable facts upon which a trier of fact might reasonably rely.

*Id.*, ¶ 40 (footnote omitted). The *Arends* court analogized a WIS. STAT. § 980.09(2) (2005–06) review to a circuit court's review of a motion to dismiss at the close of evidence, which assesses "whether the record contains any evidence that would support relief for the plaintiff." *Id.*, ¶ 42 (citing WIS. STAT. § 805.14(4) (2005–06) and *American Family Mut. Ins. Co. v. Dubrzynski*, 88 Wis. 2d 617, 624–25, 277 N.W.2d 749 (1979)). If so, the court was required to set the matter for a discharge trial.

¶ 27. In Act 84, the legislature made changes to both WIS. STAT. § 980.09(1) and (2). The meaning and effect of these amendments are central to the parties' dispute on appeal. The State contends the changes to § 980.09 wrought by Act 84 altered the procedure articulated in *Arends* in a manner that abrogated that decision. Most significantly, the State argues § 980.09(2) now requires circuit courts to "weigh" the petitioner's proffered evidence against any evidence the State marshals in its favor. We perceive the State's argument to be that the circuit court must determine —after the petition and any response from the State have been submitted—whether all facts and evidence of record favorable to the petitioner are more persua-

sive than the facts and evidence of record suggesting no "change" concerning the petitioner has occurred.

¶ 28. We begin with the amendments to WIS. STAT. § 980.09(1), the most substantial of which was the legislature's decision to replace the "may conclude" standard with a "would likely conclude" standard.[7] *See* Act 84, § 21. The legislature also altered the lookback period within which to assess a change in the person's condition. *Id.* Subsection (1) now reads in full:

> A committed person may petition the committing court for discharge at any time. The court shall deny the petition under this section without a hearing *unless the petition alleges facts from which the court or jury would likely conclude the person's condition has changed* since the most recent order denying a petition for discharge after a hearing on the merits, or since the date of his or her initial commitment order if the person has never received a hearing on the merits of a discharge petition, so that the person no longer meets the criteria for commitment as a sexually violent person.

Subsection 980.09(1) (emphasis added).

¶ 29. WISCONSIN STAT. § 980.09(2) was also revised. The legislature struck the requirement that the circuit court review the petition within thirty days. *See* Act 84, § 23. It also clarified the focus of the discretionary hearing from that of the contents of the petition to whether the record as a whole contains facts from which a court or jury would likely conclude "the person's condition has sufficiently changed." *Id.* The

[7] We note that a WIS. STAT. ch. 980 case currently pending before the supreme court, *State v. Talley*, Appeal No. 2013AP950, appears to involve the 2011–12 version of the statutes, which includes the "may conclude" standard under WIS. STAT. § 980.09.

legislature provided that a court "may," rather than "shall," consider enumerated items in the record, which now expressly include the evidence introduced at the original commitment trial or most recent discharge trial. *Id.* Subsection (2) now reads in full:

> In reviewing the petition, the court *may hold a hearing to determine if the person's condition has sufficiently changed such that a court or jury would likely conclude the person no longer meets the criteria for commitment as a sexually violent person.* In determining under this subsection whether the person's condition has sufficiently changed such that a court or jury would likely conclude that the person no longer meets the criteria for commitment, the court *may* consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state. If the court determines that the record does not contain facts from which a court or jury would likely conclude that the person no longer meets the criteria for commitment, the court shall deny the petition. If the court determines that the record contains facts from which a court or jury would likely conclude the person no longer meets the criteria for commitment, the court shall set the matter for trial.

Subsection 980.09(2) (emphasis added). Notably, the language regarding a court's consideration of "relevant facts in the petition and in the state's written response" remains unchanged from the prior version of § 980.09(2).

¶ 30. Hager rejects the notion that Wis. Stat. § 980.09, as amended, contemplates a "weighing or balancing process." He contends *Arends* survived Act

84's enactment because, just as before, the circuit court's focus under § 980.09(2) is the *facts* of record as they relate to whether the petitioner's condition has sufficiently changed. *See Arends*, 325 Wis. 2d 1, ¶ 37. In Hager's view, "[r]ather than prescribing the 'weighing' the State advocates, this provision plainly addresses only the evidence *supporting* the petition." In other words, Hager contends the statute still contemplates that the petitioner bears a burden of production, rather than a burden of proof, in order to receive a discharge trial. Hager contends the contrary interpretation of requiring a petitioner essentially to prove he or she is not a suitable candidate for continued commitment before receiving a discharge trial violates due process. *See, e.g., Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (observing the state bears the burden of showing by clear and convincing evidence that an individual is mentally ill and dangerous).

¶ 31. To determine the effect of the amendments to Wis. Stat. § 980.09, we must interpret the new statutory language. Such interpretation presents a question of law, which we review de novo. *State v. Jones*, 2013 WI App 151, ¶ 5, 352 Wis. 2d 87, 841 N.W.2d 306. Statutory interpretation "begins with the language of the statute; if the meaning of that language is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is generally given its "common, ordinary, and accepted meaning." *Id.* It is also "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46.

¶ 32. At oral argument, the parties generally agreed on the effect of the substitution of a "would likely conclude" standard for the "may conclude" standard as to the quantum and quality of facts necessary for a determination that a discharge trial is required. Whereas a mere possibility of success was previously sufficient, *see Arends*, 325 Wis. 2d 1, ¶¶ 28–30, a petitioner now must demonstrate a reasonable likelihood of success to obtain a discharge trial, *see* Wis. Stat. § 980.01(1m) (" 'Likely' means more likely than not."); *State v. Smalley*, 2007 WI App 219, ¶ 6, 305 Wis. 2d 709, 741 N.W.2d 286 (same). This change accomplished a material increase in the petitioner's burden of production. However, as we shall explain, the change does not allow, much less require, the circuit court to determine, at this preliminary stage, whether the facts supporting the petitioner are more compelling or credible than evidence unfavorable to the petitioner—at least, not to any extent greater than contemplated by *Arends*.

¶ 33. The State conceded at oral argument that, from a pleading standpoint, "would likely conclude" is not an unattainable, or even generally difficult, standard. Demonstrated progress in treatment or a new diagnosis may constitute evidence that a person is no longer sexually violent for purposes of civil commitment. *See State v. Pocan*, 2003 WI App 233, ¶ 12, 267 Wis. 2d 953, 671 N.W.2d 860; *see also Combs*, 295 Wis. 2d 457, ¶ 25 (addressing the scope of *Pocan*'s holding). In addition, a "change" in the person's condition includes not only a change "in the person himself or herself, but also a change in the professional knowledge and research used to evaluate a person's mental

disorder or dangerousness . . . ." *State v. Ermers*, 2011 WI App 113, ¶¶ 1, 16, 336 Wis. 2d 451, 802 N.W.2d 540. Nothing in Act 84's amendments to Wis. Stat. § 980.09 altered these holdings. Thus, the State conceded at oral argument that, even under the new pleading standard, a discharge petition containing an expert report opining, for example, that the person no longer suffers from a predisposing mental disorder, is sufficient for the circuit court to proceed to a Wis. Stat. § 980.09(2) review.

¶ 34. The central dispute at oral argument and in the briefs was how the procedure under Wis. Stat. § 980.09(2) occurs. In particular, can the circuit court, while making its determination, weigh evidence favoring the petitioner directly against evidence disfavoring the petitioner, including competing expert opinions? In resolving this question, we are mindful the legislature "is presumed to be aware of existing laws and the courts' interpretations of those laws when it enacts a statute." *Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶ 103, 327 Wis. 2d 572, 786 N.W.2d 177 (footnotes omitted). Contrary to the State's argument, the increase in the pleading standard does not clearly signal the legislature's intent to overrule *Arends* and adopt a "weighing" procedure during a § 980.09(2) review.

¶ 35. We conclude the legislature's use of the phrase "would likely conclude" in articulating the new preliminary standard is insufficient to clearly signal the legislature's intention to transition to a procedure allowing the "weighing" of facts or expert opinions. In *Arends*, the State also proposed the 2006 amendments to Wis. Stat. § 980.09(2) compelled an interpretation that "elevate[d] the [circuit] court's gatekeeping role and [gave] courts more discretion to make limited

credibility determinations." *Arends*, 325 Wis. 2d 1, ¶ 35. The supreme court rejected the State's interpretation because the statute did not use the phrases "probable cause" or "preponderance of the evidence," "both of which are common terms of art that the legislature could have used." *Id.*, ¶ 37. In addition, the focus of § 980.09(2) was on the documents and arguments before the court, and whether they contained sufficient facts to proceed to a discharge trial. *Id.* These features remain true of § 980.09(2) today. *Arends* provided the legislature with examples of language clearly adopting the approach the State argues for today, yet the legislature chose not to use them or other such language when giving more "teeth" to the circuit court's gatekeeping function.

¶ 36. The State seizes upon paragraph 40 of *Arends*, in which the supreme court "reject[ed] the State's argument that the circuit court may weigh evidence favoring the petitioner directly against evidence disfavoring the petitioner." *See Arends*, 325 Wis. 1, ¶ 40; *see also supra* ¶ 26. The State argues that unlike the statute considered in *Arends*, the current version of Wis. Stat. § 980.09(2), by virtue of its "would likely conclude" language, *does* ask the circuit court to decide whether the facts of record more heavily favor the petitioner.

¶ 37. We do not agree. Wisconsin Stat. § 980.09(2) still asks whether the "record," as defined under subsection (2), contains such facts as would justify holding a discharge trial. If the circuit court determines the record does contain facts from which a court or jury would likely conclude the person no longer meets the criteria for commitment, the court must set the matter for a discharge trial. Wis. Stat. § 980.09(2). Again, this language does not clearly direct the circuit court to

"weigh" anything, at least not to an extent greater than it did when *Arends* was decided.[8] Instead, the court must determine whether the facts in the record favorable to the petitioner, including those facts contained within or referenced by the enumerated items, establish a reasonable likelihood of success at an ensuing discharge trial.

¶ 38. At oral argument, the State cited WIS. STAT. § 980.09(1m)(c) in support of its assertion that § 980.09(2) requires "weighing" the evidence. Paragraph (1m)(c) states that both the petitioner and the district attorney or department of justice may use experts or professional persons to support (or oppose, as the case may be) the discharge petition. The State posited that the legislature would not permit it to obtain expert opinions if those opinions were not to be "weighed" against the evidence in the petitioner's favor.

¶ 39. We do not agree that WIS. STAT. § 980.09(1m)(c) supports the State's interpretation of § 980.09(2). Paragraph (1m)(c) could not have abrogated *Arends* because its contents predate that decision. *See* WIS. STAT. § 980.075(4)(a), (4)(b) (2005–06). The legislature simply consolidated and renumbered these provi-

[8] To make this more concrete, the following language from *Arends*, slightly modified to reflect the new standard in WIS. STAT. § 980.09(2), further supports our interpretation: "This [weighing of the evidence] is impermissible because the standard is not whether the evidence more heavily favors the petitioner, but whether the enumerated items contain facts" from which a factfinder would likely conclude that the petitioner is entitled to relief. *See State v. Arends*, 2010 WI 46, ¶ 40, 325 Wis. 2d 1, 784 N.W.2d 513. Indeed, the State's argument gives insufficient importance to the word "likely," and appears more akin to a statutory requirement that the circuit court determine whether a factfinder "would conclude" the person no longer meets the criteria for commitment as a sexually violent person.

sions in 2013, placing them, quite logically, in the statute dealing with discharge petitions. *See* Act 84, § 11. Although the substance of § 980.09(1m)(c) existed at the time *Arends* was decided, the court did not express any reservations about this provision when it concluded § 980.09(2) does not encompass a "weighing" of evidence. Moreover, the State proceeds from a false premise. An expert report submitted by the State may be helpful to point out certain objective failings in the petition, including the petitioning expert's lack of qualifications, his or her misapplication of the relevant legal standard, or his or her misunderstanding of, or material omission of reference to, certain record evidence.

¶ 40. Further to this point, it appears the majority of revisions to Wis. Stat. § 980.09(2) enacted as part of Act 84 codify judicial interpretations of that subsection, most notably *Combs*. In *Combs*, the court-appointed evaluator's opinion that Combs did not meet the criteria for commitment was not based on any change in the historical facts, research or professional writings. *Combs*, 295 Wis. 2d 457, ¶ 27. Instead, the expert was merely someone who had not previously evaluated Combs using actuarial instruments that were also used by the experts who testified at Combs' commitment trial. *Id.* We concluded the legislature did not intend that probable cause under Wis. Stat. § 980.09(2) (2003–04) "may be established by an expert's opinion that a person is not sexually violent without regard to whether that opinion is based on matters that were already considered by experts testifying at the commitment trial or a prior evidentiary hearing." *Combs*, 295 Wis. 2d 457, ¶ 32; *see also State v. Schulpius*, 2012 WI App 134, ¶ 35, 345 Wis. 2d 351, 825 N.W.2d 311 (concluding circuit courts, in deciding whether to hold a § 980.09(2) hearing, must decide

whether the petitioner has set forth "new evidence, not considered by a prior trier of fact," sufficient to support a finding in the petitioner's favor).

¶ 41. The Act 84 changes to WIS. STAT. § 980.09(2) suggest the legislature intended to codify *Combs* and its progeny. Because *Combs* mandates that a petitioner must present something "new" demonstrating he or she is no longer a suitable subject for commitment, it makes sense that the legislature would shift the review under § 980.09(2) to focus on the record rather than the petition.[9] A petition that appears facially sufficient under WIS. STAT. § 980.09(1) may nonetheless suffer from the fatal defect that, for example, the expert opinion therein only considers historical facts and relevant professional research that was in existence and considered by experts at the time of the initial commitment or previous discharge hearing. The legislature's decision to change the lookback period from the initial commitment trial in all instances, to the initial commitment order or the "most recent order denying a petition for discharge after a hearing on the merits," supports this interpretation. *See Combs*, 295 Wis. 2d 457, ¶ 32.

[9] This appears to have been the construction adopted by this court of the old version of WIS. STAT. § 980.09(2) (2009–10), which omitted any reference to the "change" in the petitioner's status as a suitable candidate for commitment. *See State v. Ermers*, 2011 WI App 113, ¶ 37 n.14, 336 Wis. 2d 451, 802 N.W.2d 540. As we observed in *Ermers*, "the only reasonable construction of § 980.09(1) and (2) is that the 'change' that must be alleged in the petition under § 980.09(1), as we have interpreted it, must also be shown by the documents considered under § 980.09(2) in order to obtain a discharge hearing." *Ermers*, 336 Wis. 2d 451, ¶ 37 n.14. "It is not reasonable to require a pleading to allege facts that need not later be presented as evidence." *Id.*

¶ 42. The State represented at oral argument that determining whether something "new" has been presented in a discharge petition is a time-consuming task. This is an understandable position, one reflected in other changes to WIS. STAT. § 980.09(2). The statute now allows, but does not require, the circuit court to consider certain enumerated items in the record, "including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge." *Id.* This change appears to address the problem the *Arends* court observed, in that a circuit court cannot be required to consider documents that "may not be available or otherwise within the record before the court." *See Arends*, 325 Wis. 2d 1, ¶ 33. *Arends* held that a court need not seek out evidence not before it, but could, in its discretion, order the production of any enumerated items not in the record. *Id.* Because this process may require significant resources and potentially one or more judicial proceedings, it makes sense that the legislature would no longer mandate a thirty-day period within which the review must occur.

¶ 43. Although we conclude WIS. STAT. § 980.09(2) does not contemplate the "weighing" of the evidence and facts in support of the petition against the evidence and facts in support of continued commitment, it remains true that circuit courts need not "take every document a party submits at face value." *See Arends*, 325 Wis. 2d 1, ¶ 39. As before, the circuit court's determination that a court or jury would likely conclude the person no longer meets the criteria for commitment "must be based on facts upon which a trier of fact could reasonably rely." *See id.* For example, a factfinder could not find in favor of the petitioner if the only evidence in the petitioner's favor consists of an

expert report citing new professional research, without the expert having actually applied that research to the petitioner through a recent psychological evaluation. *See State v. Richard*, 2011 WI App 66, ¶ 19, 333 Wis. 2d 708, 799 N.W.2d 509. By the same token, the changes to § 980.09(2) do not undermine the *Arends* court's hypotheticals—namely, that a circuit court need not hold a discharge hearing if the evidence "shows the expert is not qualified to make a psychological determination, or [if] the expert's report was based on a misunderstanding or misapplication of the proper definition of a sexually violent person." *See Arends*, 325 Wis. 2d 1, ¶ 39. In addition, the change in the standard requiring the petitioner to put forward facts demonstrating a reasonable likelihood of success would now allow the circuit court to dismiss a petition without a hearing under § 980.09(2) *if* the only facts of record supportive to the petitioner have low probative value.[10]

¶ 44. Given our conclusion that the legislature's modifications to WIS. STAT. § 980.09 do not require the "weighing" of evidence presented for and against the petition, we need not directly address whether those modifications improperly and unconstitutionally shift the burden of proof to the petitioner. While the parties agree the construction of § 980.09(2) we adopt does not have obvious constitutional ramifications, the State's

---

[10] Probative value refers to "whether the evidence has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." *State v. Sullivan*, 216 Wis. 2d 768, 786, 576 N.W.2d 30 (1998). As applied in the WIS. STAT. § 980.09 context, evidence has probative value if it supports an inference that the person's condition has sufficiently changed such that he or she no longer meets the criteria for commitment.

embrace of an interpretation requiring "weighing" might. *See, e.g., supra* ¶ 21 (briefly explaining the constitutional issues concerning continued civil commitments such as under WIS. STAT. ch. 980). Indeed, Hager conceded, both in his brief and at oral argument, that his interpretation of § 980.09 represents a saving construction under which it is not necessary to reach the constitutional issue. *See, e.g., Milwaukee Branch of NAACP v. Walker*, 2014 WI 98, ¶¶ 63–64, 357 Wis. 2d 469, 851 N.W.2d 262 ("If a saving construction . . . preserves the constitutionality of the statute, we will employ it."). We agree.

¶ 45. Applying the proper interpretation of the statute to Hager's discharge petition, we conclude the petition and facts of record are sufficient to warrant a discharge trial. *See Arends*, 325 Wis. 2d 1, ¶ 48 (implying that review of the sufficiency of the petition under WIS. STAT. § 980.09(1) and (2) may be undertaken as a matter of law by the appellate court); *Schulpius*, 345 Wis. 2d 351, ¶¶ 36–43 (appearing to apply de novo review of the sufficiency of a petition under § 980.09(2)).[11] The State's application of § 980.09 to the

[11] Moreover, our conclusion that the new "would likely conclude" standard under WIS. STAT. § 980.09(1) and (2) requires the petitioner to show a reasonable likelihood of success, an objective standard, also suggests that appellate courts review a circuit court's determination in that regard de novo. *See State v. Nelson*, 2006 WI App 124, ¶ 20, 294 Wis. 2d 578, 718 N.W.2d 168 (" '[R]easonable' means what is appropriate in the circumstances according to an objective standard."). At the end of the day, the procedure under § 980.09(2) is an exercise in the application of a given set of facts to a statute—a question of law that we review independently. *See Arends*, 325 Wis. 2d 1, ¶ 13; *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶ 16, 333 Wis. 2d 273, 797 N.W.2d 854. We see no reason to depart from *Arends*' observation that, for purposes of determining whether the

review of the circuit court's decision here is premised on its desired interpretation of the statute as permitting a "weighing" of the evidence. We have rejected that interpretation, and the State does not present any cogent alternative argument that Hager's petition and the record are otherwise insufficient, either because of a failing in Wakefield's report or because its contents do not represent anything "new." *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments."); *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108–09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

¶ 46. In any event, Wakefield's expert report in support of Hager's petition opined that Hager was no longer more likely than not to commit a future act of sexual violence. To support her opinion, she cited her application of two actuarial risk instruments, the Static-99R and the MATS-1, that the experts at Hager's initial commitment trial did not consider. In addition, Wakefield opined that certain facts and dynamic factors, including Hager's advancing age and reduced sexual deviance following treatment (which was verified in part by physiological testing), reduced Hager's risk below the minimum threshold necessary for continued commitment. Wakefield's report, and anticipated testimony consistent therewith, constituted relevant, probative evidence from which a factfinder "would likely conclude" that Hager no longer qualifies as a "sexually violent person." We therefore remand for

---

petitioner is entitled to a discharge trial under Wis. Stat. § 980.09(2), appellate courts are "able to review the evidence ourselves." *See Arends*, 325 Wis. 2d 1, ¶ 48.

the circuit court to hold a discharge trial in accordance with Wis. Stat. § 980.09(3) through (5).

*By the Court.*—Orders reversed and cause remanded for further proceedings.