IN RE the COMMITMENT OF Howard CARTER:

STATE of Wisconsin,
Petitioner-Respondent,

v.

Howard CARTER,
Respondent-Appellant.†

Court of Appeals

*No. 2015AP1311. Oral argument September 7, 2016.
—Decided January 24, 2017.*

2017 WI App 9

(Also reported in 892 N.W.2d 754.)

† Petition for Review filed.

On behalf of the respondent-appellant, the cause was submitted on the brief of and oral argument by *Len Kachinsky* of *Sisson* and *Kachinsky Law Offices*, Appleton.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *Brad D. Schimel*, attorney general. There was oral argument by *Donald V. Latorraca*, assistant attorney general.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. Howard Carter appeals an order denying without a trial his 2013 petition seeking discharge from his Wɪs. Sᴛᴀᴛ. ch. 980 commitment as a "sexually violent person,"[1] as well as an order denying

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

his motion for reconsideration. Carter contends his initial attorney rendered constitutionally ineffective assistance by failing to challenge the retroactive application of the then-recently amended WIS. STAT. § 980.09 to his discharge petition. The discharge petition was filed prior to the legislation's effective date, but the circuit court had not yet decided or held a hearing on the petition's sufficiency.

¶ 2. Carter concedes the statutory provisions at issue in this case, WIS. STAT. § 980.09(1) and (2), are procedural. The amendments to those subsections had the effect of accomplishing "a material increase in the petitioner's burden of production" necessary to obtain a discharge trial. *State v. Hager*, 2017 WI App 8, ¶ 32, ___ Wis. 2d ___, ___ N.W.2d ___. Whereas a petitioner was previously entitled to a discharge trial if there were any facts upon which a reasonable factfinder could grant relief, the new standard requires the petitioner to "demonstrate a reasonable likelihood of success in order to obtain a discharge trial." *Id.* Contrary to Carter's arguments, the new legislation did not disturb any vested right of Carter's to a discharge trial, nor does it pose an unreasonable burden to his obtaining a discharge trial. We conclude § 980.09(1) and (2) apply retroactively to Carter's petition.

¶ 3. Because the amendments to WIS. STAT. § 980.09(1) and (2) operate retroactively, Carter's attorney was not ineffective for failing to raise that issue. Carter alternatively argues that if the amendments apply to his discharge petition, they work an unconstitutional deprivation of his due process rights. For the reasons we articulated in *Hager*, we reject this argument. We therefore affirm the orders in this case.

726

## BACKGROUND

¶ 4.   Carter was civilly committed as a sexually violent person on February 5, 2009, following a jury trial. Carter's commitment was upheld by summary order of this court dated April 6, 2010. In the meantime, Carter underwent an annual examination in connection with his commitment to determine whether he met the conditions for supervised release or discharge. Psychologist Melissa Westendorf diagnosed Carter with paraphilia not otherwise specified and antisocial personality disorder, each of which predisposed him to commit sexually violent acts. She concluded Carter was not a suitable candidate for supervised release or discharge from his commitment.

¶ 5.   Carter filed petitions for discharge in 2010, 2011 and 2012, all of which he ultimately withdrew prior to a discharge trial. Carter filed another discharge petition on February 26, 2013, following his annual reexamination, in which the evaluating doctor opined he was not a suitable candidate for supervised release or discharge from his commitment. An amended petition was filed on December 13, 2013. The circuit court appointed Dr. Diane Lytton, a licensed psychologist, as Carter's expert witness.

¶ 6.   Lytton's report supported Carter's discharge petition. Lytton disagreed with earlier experts' diagnoses of paraphilia, not otherwise specified, but acknowledged that, due to his rule-breaking and dishonesty, Carter "most likely can continue to be diagnosed with antisocial personality disorder." However, she concluded this condition did not predispose Carter to commit acts of sexual violence. Lytton also opined Carter was not more likely than not to reoffend, citing his scores on two statistical risk assessment instru-

ments, the Static-99R and the MATS-1. Lytton declined to compare Carter's Static-99R score with those of offenders in a "High Risk/Needs" subsample, which she opined was based in part on out-of-date recidivism rates of a large sample of sex offenders. Lytton also cited as mitigating factors Carter's age[2] and his significant progress in treatment at Sand Ridge Secure Treatment Center. This progress, according to Lytton, included Carter's engagement in treatment, his identification of "aspects of his former distorted thinking about sex and women," and the absence of signs of deviant sexual interests.

¶ 7. At a motion hearing in February 2014, the State argued the circuit court should apply new amendments to WIS. STAT. § 980.09(1) and (2). These amendments were included in 2013 Wis. Act 84 (hereinafter "Act 84"), which became effective on December 14, 2013. The amendments required the circuit court to deny the discharge petition without a hearing unless the petition alleges facts, supported by the record, "from which the court or jury *would likely conclude*" Carter's condition had changed since his initial commitment such that he should no longer be civilly committed. *See* WIS. STAT. § 980.09(1), (2) (emphasis added). Carter's attorney did not argue for the application of the previous "may conclude" standard under § 980.09(1) and (2) (2011–12), nor did he object to the application of the new standard.

¶ 8. The State conceded Carter's petition was facially sufficient under WIS. STAT. § 980.09(1), but it asserted Carter's petition failed upon a review of the record under § 980.09(2)because Carter had not al-

---

[2] Lytton observed that Carter was approaching forty years old, which would further reduce his estimated risk under the Static-99R and MATS-1.

leged anything "new." The State acknowledged there had been a change in the relevant professional research since Carter's initial commitment trial. However, the State observed that Carter's scores on the Static-99 and the new Static-99R were so high that there "was a very little change" in the respective recidivism rates.[3] Carter emphasized his treatment progress, Lytton's conclusion that he did not have a predisposing mental disorder, and that the State had, according to him, improperly used the Static-99R's "High Risk/Needs" subsample to reach its recidivism estimates.

¶ 9. At a subsequent hearing in June 2014, the State addressed Lytton's reliance on the MATS-1 instrument. The State argued the MATS-1 was "largely based on the Static-99" samples, and therefore it was not "new." The State also observed that the MATS-1 was the "first iteration of that instrument," and it was both insufficiently reliable and based on assumptions that were not accepted in the field. More generally, the State asserted that arguments regarding the absence of a predisposing mental disorder and criticisms of the Static-99 as overestimating reoffense risk had been heard at Carter's initial commitment trial. The circuit court concluded Carter was not entitled to a discharge trial based on either a favorable change in professional knowledge or sufficient progress in treatment.

¶ 10. Carter filed a motion for reconsideration claiming ineffective assistance of counsel. Represented by new counsel, Carter alleged his initial attorney was ineffective for, among other things, failing to challenge

---

[3] The State represented Carter's score was "an 8 or a 9," and it conceded that Carter would have a more compelling argument if he had scored a six.

Act 84's applicability.[4] According to Carter, the "may conclude" standard should have applied because his discharge petition was filed prior to Act 84's effective date. Carter "reluctantly" conceded that his discharge petition would not satisfy the new "would likely conclude" standard. However, he argued the legislature's adoption of that standard "dramatically increased the requirements" for obtaining a discharge trial and was therefore unconstitutional.

¶ 11. Following a *Machner*[5] hearing, the circuit court denied Carter's postcommitment motion. It concluded the Act 84 amendments to WIS. STAT. § 980.09(1) and (2), including the adoption of the "would likely conclude" standard, applied retroactively to Carter's petition. Accordingly, the court rejected Carter's inef-

---

[4] Carter also alleged—and does so again in this appeal—his previous attorney was ineffective for failing to assert that the evidentiary standard under WIS. STAT. § 907.02(1) did not apply to the expert testimony in his case because his WIS. STAT. ch. 980 commitment began before the effective date of the legislation changing that standard. *See generally State v. Alger*, 2015 WI 3, 360 Wis. 2d 193, 858 N.W.2d 346. However, even assuming Carter's attorney performed deficiently on this basis, Carter has not demonstrated prejudice, in that he concedes "[i]t is not clear that the court denied Carter's request for a discharge trial solely because it applied the wrong standard on admissibility of expert opinions." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding defendant must show deficient performance by counsel that prejudiced the defense). Indeed, Carter appears to urge this court to address the matter nonetheless because the issue is likely to recur, which is, in fact, an argument against dismissing an appeal as moot. *See State ex rel. La Crosse Tribune v. Circuit Court for La Crosse Cty.*, 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983). We decline Carter's invitation to address matters that concern an evidentiary hearing to which we conclude he is not entitled.

[5] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

fective assistance of counsel claim. The court also rejected Carter's due process challenge to the legislation.

¶ 12. Carter appealed, and on February 2, 2016, we certified this case and *State v. Hager*, Appeal No. 2015AP330, to the Wisconsin Supreme Court. The certification asked the supreme court to "determine issues related to the effect of 2013 Wis. Act 84," including whether the new statute authorized the circuit court to "weigh" the evidence to ascertain whether a discharge trial was warranted, how such "weighing" was to be accomplished, and whether the statute was unconstitutional. We also certified the question of Act 84's retroactive application. The supreme court denied certification and we ordered oral argument. We now affirm the circuit court's determination regarding the retroactive application of Act 84 and the insufficiency of Carter's petition.

## DISCUSSION

¶ 13. Act 84 was enacted on December 12, 2013, published the following day, and became effective on December 14, 2013. This legislation affected the process by which someone committed as a "sexually violent person" under Wis. Stat. ch. 980 may obtain subsequent discharge trials. As relevant here, the previous version of Wis. Stat. § 980.09 (2011–12) required the circuit court to deny a discharge petition unless it found that the petition and record contained "facts from which the court or jury *may conclude* the person's condition has changed." (Emphasis added.) The statute currently requires a court to deny the petition unless it and the record contain facts from which the court or a jury "would likely conclude" the person's condition had changed. *See* Wis. Stat.

§ 980.09(1), (2). It is undisputed Carter's petition was filed prior to Act 84's effective date.

¶ 14.   Carter first argues Act 84 does not apply retroactively to petitions filed prior to its effective date. Generally, statutes are applied prospectively. *Gutter v. Seamandel*, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981). "If, however, a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application unless retroactive application would impair contracts or disturb vested rights." *Betthauser v. Medical Protective Co.*, 172 Wis. 2d 141, 147, 493 N.W.2d 40 (1992) (citing *Steffen v. Little*, 2 Wis. 2d 350, 357–58, 86 N.W.2d 622 (1957)).

¶ 15.   Carter appears to concede that Act 84's amendments to WIS. STAT. § 980.09(1) and (2) are procedural rather than substantive. A procedural statute "prescribes the method, that is, the legal machinery, used in enforcing a right or remedy." *Trinity Petroleum, Inc. v. Scott Oil Co.*, 2007 WI 88, ¶ 41, 302 Wis. 2d 299, 735 N.W.2d 1. A substantive law, on the other hand, creates rights and obligations. *Id.* Determining whether a statute is substantive or procedural presents a question of law. *Id.*, ¶ 115 (Roggensack, J., concurring in part and dissenting in part) (citing *Matthies v. Positive Safety Mfg. Co.*, 2001 WI 82, ¶¶ 15, 21, 244 Wis. 2d 720, 628 N.W.2d 842; *Shulz v. Ystad*, 155 Wis. 2d 574, 596, 456 N.W.2d 312 (1990)).

¶ 16.   We agree with both Carter and the State that WIS. STAT. § 980.09(1) and (2) are procedural. These subsections create "a two-step process . . . aimed at weeding out meritless and unsupported petitions,

while still protecting a petitioner's access to a discharge hearing." *State v. Arends*, 2010 WI 46, ¶ 22, 325 Wis. 2d 1, 784 N.W.2d 513; *see also Hager*, ___ Wis. 2d ___, ¶¶ 22, 34–35. As such, like the procedural statute in *Trinity Petroleum*, these provisions serve to deter baseless filings, to promote the speedy determination of litigation on the merits, and to promote judicial efficiency. *See Trinity Petroleum*, 302 Wis. 2d 299, ¶ 47. They prescribe the legal mechanisms by which a committed person may obtain a discharge trial. *See City of Madison v. Town of Madison*, 127 Wis. 2d 96, 102, 377 N.W.2d 221 (Ct. App. 1985).

¶ 17. While conceding WIS. STAT. § 980.09(1) and (2) are procedural, Carter nonetheless argues the amendments to those subsections cannot be applied retroactively because he has a "vested right" to a discharge trial. Carter emphasizes we have recognized that "a petitioner's right to a discharge hearing under the appropriate circumstances is a critical factor in the constitutional validity of WIS. STAT. ch. 980." *See State v. Richard*, 2014 WI App 28, ¶ 17, 353 Wis. 2d 219, 844 N.W.2d 370 (citing *State v. Combs*, 2006 WI App 137, ¶ 28, 295 Wis. 2d 457, 720 N.W.2d 684).

¶ 18. While we agree there is an important relationship between a petitioner's ability to receive a discharge trial and the constitutionality of WIS. STAT. ch. 980 commitments generally, Carter's argument fails because a committed person under ch. 980 does not have a "vested right" to a discharge trial. *Richard* recognized that a discharge trial is necessary only under the "appropriate circumstances," which are defined by WIS. STAT. § 980.09(1) and (2). *See Richard*, 353 Wis. 2d 219, ¶ 17. When the existence of a right is contingent on an uncertain future event (here, Carter's satisfaction of the preliminary requirements under

subsections (1) and (2)), and that event has not occurred prior to the enactment of a statute, there is no vested right to the application of the prior law. *See Lands' End, Inc. v. City of Dodgeville*, 2016 WI 64, ¶ 50, 370 Wis. 2d 500, 881 N.W.2d 702; *see also, e.g., United States Cold Storage, Inc. v. City of La Vista*, 831 N.W.2d 23, 33–34 (Neb. 2013), *quoted with approval in Lands' End*, 370 Wis. 2d 500, ¶ 49 n.17 ("'To be considered a vested right, the right must be 'fixed, settled, absolute, and not contingent upon anything.' ").

¶ 19.   Carter also argues that complying with the new versions of Wis. Stat. § 980.09(1) and (2) unreasonably burdens him, and therefore those subsections should not be applied retroactively to him. This argument is closely related to Carter's assertion that the new version of the statute is unconstitutional. Both arguments are premised on an interpretation of § 980.09(1) and (2) that requires the circuit court to "weigh" the evidence and facts favoring the petitioner against those favoring continued commitment. Carter contends this unconstitutionally shifts the burden to the petitioner to prove his or her continued commitment is unnecessary before he or she even receives a trial on that issue and, "[a]s a practical matter, the new limits on the right to a discharge trial make discharge without approval from the State practically impossible."

¶ 20.   We rejected such an interpretation of Wis. Stat. § 980.09(1) and (2) in *Hager*. The amended version of those subsections does not allow, much less require, circuit courts to "weigh" the evidence supporting the discharge petition against the evidence in opposition to it, at least not to any greater extent than contemplated by *Arends*. *See Hager*, ___ Wis. 2d ___,

734

¶¶ 35, 37. Rather, the amendments accomplished "a material increase in the petitioner's burden of production" necessary to obtain a discharge trial. *Id.*, ¶ 32. Whereas previously circuit courts were required to hold a discharge trial if there was any evidence upon which the trier of fact could reasonably find for the petitioner, circuit courts must now ascertain, based on the contents of the petition and the facts favorable to the petitioner contained in the record, whether the petitioner is reasonably likely to succeed at the ensuing discharge trial. *Id.*, ¶¶ 32, 37. The record review under § 980.09(2)is primarily designed to ensure that the petition alleges "new" and probative information that has not yet been presented to a factfinder. *Hager*, ___ Wis. 2d ___, ¶¶ 41–43. Accordingly, we do not agree that the application to Carter of Act 84's "would likely conclude" standard imposes an unreasonable burden or is constitutionally suspect.

¶ 21. Carter "reluctantly agrees with the State" that if the new standard applies, "the state of the record would not support the right to a [discharge] trial" with respect to his petition at issue in this appeal. We must take this concession at face value, as to do otherwise would require us to wholly develop an argument on Carter's behalf, which is improper. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments."). In addition, developing such an argument necessarily would involve a holistic review of the voluminous record, which we will not undertake without the parties' aid and guidance. We have "no duty to scour the record" to review arguments unaccompanied by adequate record citations. *Roy v. St.*

*Lukes Med. Ctr.*, 2007 WI App 218, ¶ 10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.

¶ 22.   Because we conclude, as a matter of law, that Act 84's amendments to Wis. Stat. § 980.09(1) and (2) apply retroactively to Carter, we conclude Carter's initial attorney did not perform deficiently by failing to object to that matter.[6] To demonstrate ineffective assistance of counsel, the person must show that: (1) counsel performed deficiently; and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Trial counsel's failure to bring a meritless motion does not constitute deficient performance." *State v. Swinson*, 2003 WI App 45, ¶ 59, 261 Wis. 2d 633, 660 N.W.2d 12. We need not address both prongs if a person fails to make a sufficient showing on either of the two. *Id.*

¶ 23.   For the foregoing reasons, we affirm both the order denying Carter's discharge petition and the order denying Carter's motion for reconsideration based on the alleged ineffective assistance of his counsel.

*By the Court.*—Orders affirmed.

---

[6] The State alternatively argues Carter's initial attorney was not ineffective because he simply made an error in judgment regarding an unsettled area of the law. *See, e.g., State v. Van Buren*, 2008 WI App 26, ¶¶ 18–19, 307 Wis. 2d 447, 746 N.W.2d 545. Because we conclude any objection to the retroactive application of the amendments to Wis. Stat. § 980.09(1) and (2) would have been meritless, we need not reach this alternative argument. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 48, 326 Wis. 2d 300, 786 N.W.2d 15.