**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 5, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. §  808.10 and RULE 809.62.

**Appeal No.     2022AP711**

**STATE OF WISCONSIN**

Cir. Ct. No.  1997CI1

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE COMMITMENT OF JERRY L. BUSH:

STATE OF WISCONSIN,

   PETITIONER-RESPONDENT,

 V.

JERRY L. BUSH,

   RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Waukesha County: PAUL BUGENHAGEN, JR., Judge.  *Reversed and cause remanded for further proceedings*.

        Before Gundrum, P.J., Neubauer and Grogan, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jerry L. Bush appeals from an order denying him a discharge trial relating to his WIS. STAT. ch. 980 (2021-22)[1] commitment. We conclude the Record contains facts from which a court or jury would likely conclude he no longer meets the criteria for commitment as a sexually violent person. *See* WIS. STAT. § 980.09(2). Specifically, the Record includes a report by an expert psychologist concluding Bush no longer has a qualifying mental disorder. The report also applies new or revised actuarial instruments developed since Bush's last discharge trial in 2004 to conclude that his risk of committing a future act of sexual violence no longer meets the legal standard of "more likely than not." *See* WIS. STAT. § 980.01(1m), (7). Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

¶2 Bush was adjudged a sexually violent person and committed to the care and custody of the Wisconsin Department of Health Services in 2002. In 2004, he refused to waive his right to petition for discharge. The circuit court held a discharge trial at which it heard testimony from three psychologists and one psychiatrist. Following the hearing, the court concluded Bush remained a sexually violent person and ordered his commitment continued. Bush has been re-examined annually, most recently for purposes of this appeal in 2020, at which time the examining psychologist concluded Bush still suffered from a predisposing mental disorder (i.e., antisocial personality disorder (ASPD)) and that his risk of

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

committing a future act of sexual violence exceeded the legal "more likely than not" threshold.

¶3      Bush filed the present discharge petition in 2020, at age sixty-two.[2] The petition was supported by an eighteen-page report from psychologist Courtney Endres.[3]      Endres chronicled Bush's history of sexual offending preceding his 1980 conviction for two counts of second-degree sexual assault and one count of incest.  She also chronicled his time in the prison system, his transfer to federal custody, and his 2012 parole revocation during his term of commitment at Sand Ridge Secure Treatment Center (Sand Ridge).  Bush was readmitted to Sand Ridge in 2017, where he has remained.

¶4      Endres, evaluating Bush's recent conduct under the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders, concluded that Bush no longer met sufficient criteria for a diagnosis of ASPD.  Nonetheless, Endres attempted to develop a risk profile for Bush by applying two actuarial instruments: the Static-99R, which scores the offender using unchanging historical facts and identifies the rate at which individuals with similar scores

---

[2] Bush filed an amended petition in 2021 after counsel was appointed for him.

[3] Endres addressed both Bush's suitability for discharge and for supervised release.  The supervised release portion of her report is immaterial to the issues raised in this appeal regarding discharge.

Additionally, we note it is undisputed that Bush has refused to participate in sex offender treatment.  While significant progress in treatment is a requirement for supervised release, it is not a prerequisite for discharge.  Rather, a committed person's ability to obtain a discharge trial is tied solely to the criteria for commitment as a sexually violent person contained in WIS. STAT. § 980.01(7).  See WIS. STAT. § 980.09(1).  When the discharge statute refers to evidence that "the person's condition has changed," the "change" referred to is either a change in the qualifying mental disorder or in the person's risk profile, the latter of which may or may not include treatment progress.  See §§ 980.01(7); 980.09(1), (3).

reoffended over designated periods of time; and the VRS-SO, which considers dynamic risk factors to assign a "change score" that helps clarify the person's risk. Those instruments estimated Bush's reoffense risk at 32% and 44% over five and ten years, respectively. There was no dynamic risk model available for a period of twenty years, but considering solely static factors, Bush's reoffense risk was estimated at 28% or 37%, depending on which risk group Bush was compared to. Endres appears to have opined that any risk assessment beyond twenty years was unreasonable given Bush's age and "significantly reduced" life expectancy due to his medical history. Ultimately, she concluded that even if Bush had a qualifying mental disorder, Bush was not likely to commit a future act of sexual violence.

¶5    The circuit court held a nonevidentiary hearing on the petition pursuant to WIS. STAT. § 980.09(2). The district attorney argued the circuit court should not take Endres's report at face value because the doctor had, in the district attorney's words, "minimiz[ed] … many of the behaviors and conduct that have been seen [in] Mr. Bush over the years." In response, Bush argued that the State was merely arguing about inferences and opinions that could be drawn from the report without challenging any of the basic facts underlying it.

¶6    The circuit court denied the petition. It noted that Bush continued to make highly offensive statements regarding sexual conduct. Though Endres's report had addressed these statements by opining that Bush had not acted—and was not likely to act—on them, the court determined Endres's report did not adequately explain her basis for that conclusion. Similarly, the court concluded Endres's analysis of the criteria for ASPD had "ignore[d] and downplay[ed] the issues that past institutions and now Sand Ridge Secure Treatment Center note in the records." The court concluded that Endres's opinions were based on a recent "snapshot of Mr. Bush" and could not withstand "careful consideration of the

entire record[.]" Bush now appeals the denial of his discharge petition without a trial.

## DISCUSSION

¶7 Among other things, a WIS. STAT. ch. 980 commitment is predicated upon the State demonstrating that the person subject to the commitment is a "'[s]exually violent person'"—that is, a person with a mental disorder that makes it likely he or she will commit a future act of sexual violence. WIS. STAT. § 980.01(7). A person may petition for discharge from a commitment at any time. WIS. STAT. § 980.09(1). At the discharge trial, the State bears the burden of proving by clear and convincing evidence that the person is still a proper subject for commitment. Sec. 980.09(3).

¶8 A discharge trial is not automatic upon the filing of a discharge petition. Rather, the statute contemplates a two-step process for weeding out meritless petitions, which is described in detail in *State v. Arends*, 2010 WI 46, ¶¶3-5, 23-43, 325 Wis. 2d 1, 784 N.W.2d 513. The first step involves a paper review of the petition itself under WIS. STAT. § 980.09(1). *See Arends*, 325 Wis. 2d 1, ¶25. A circuit court "shall deny the petition under this section without a hearing unless the petition alleges facts from which the [factfinder] would likely conclude the person's condition has changed" since the last discharge trial, such that the person no longer meets the criteria for commitment as a sexually violent person. Sec. 980.09(1).

¶9 The court here apparently regarded the petition to be facially sufficient as it held a hearing pursuant to WIS. STAT. § 980.09(2). Under a subsec. (2) review, the court may, at a hearing, assess whether the factfinder would likely conclude the person no longer meets the criteria for commitment in

light of the entire record. Although courts are to make a predictive assessment on the merits of the case, our supreme court has made clear that "when they review petitions for discharge, courts are to carefully examine, but not weigh, those portions of the record they deem helpful to their consideration of the petition, including facts both favorable as well as unfavorable to the petitioner." *State v. Hager*, 2018 WI 40, ¶30, 381 Wis. 2d 74, 911 N.W.2d 17 (plurality opinion). "If the court determines that the record contains facts from which a court or jury would likely conclude the person no longer meets the criteria for commitment, the court shall set the matter for trial." Sec. 980.09(2). We review de novo whether a person has satisfied the burden of production necessary to obtain a discharge trial. *See Hager*, 381 Wis. 2d 40, ¶32 (plurality opinion).

¶10 The State argues an examination of the complete Record demonstrates Bush has not met his burden of showing that a factfinder would likely conclude he no longer meets the criteria for commitment. The State argues Bush's condition has been "stable over his lifetime[,]" and it argues Endres's opinion was based on information that existed in 2004 and was considered at his last discharge trial.

¶11 Specifically, as to Bush's ASPD diagnosis, the State concedes that, "[s]tanding alone, Endres's report … suggests that Bush has changed." However, the State argues a discharge trial is unnecessary because Endres considered the same facts as the psychologists at Bush's 2004 trial and merely reached a different

6

conclusion.[4]  "[T]he rule is that an expert opinion based solely on facts or professional knowledge or research considered by the experts who testified at the commitment trial is insufficient to warrant a discharge hearing." *State v. Richard*, 2014 WI App 28, ¶16, 353 Wis. 2d 219, 844 N.W.2d 370.

¶12    Endres's report does not fall within the ambit of this rule.  If anything, her report suggests entirely the opposite:  that her conclusion regarding Bush's mental condition was based primarily on Bush's recent history at Sand Ridge, a matter which has not been before any previous factfinder.  Importantly, Endres did not opine that Bush has never had ASPD.  Rather, she made the assumption that "he once met the full criteria for ASPD[,]" but she concluded that his conduct at Sand Ridge between 2017 and 2020 suggested that he no longer met six of the seven criteria for that disorder.  In reaching this conclusion, she focused on research showing that "ASPD is not an unchanging diagnosis" and "often remits beginning around the fourth decade of life[.]"

¶13    Endres's opinion that Bush no longer suffers from a qualifying mental disorder, considered in the context of the entire Record, necessitates a discharge trial.  It is well-established that a change in a committed person's diagnosis may constitute evidence sufficient to satisfy his or her burden of production.  *See State v. Talley*, 2017 WI 21, ¶31, 373 Wis. 2d 610, 891 N.W.2d

---

[4] This appears to be a change from the State's arguments at the WIS. STAT. § 980.09(2) hearing, where the State criticized Endres for relying only upon recent facts and not considering the historical facts regarding Bush's commitment.  While a respondent on appeal may raise any argument that would support the circuit court's action, *State v. Neal*, 2016 WI App 34, ¶19, 369 Wis. 2d 72, 879 N.W.2d 808, the about-face is particularly notable here given the nature of the statutory criteria.

390. In *State v. Pocan*, 2003 WI App 233, ¶12, 267 Wis. 2d 953, 671 N.W.2d 860, we stated:

> A new *diagnosis* would be another way of proving someone is not still a sexually violent person. A new diagnosis need not attack the original finding that an individual was a sexually violent person. Rather, a new diagnosis focuses on the present. The present diagnosis would be evidence of whether an individual is still a sexually violent person.

Here, Endres's opinion is that Bush has essentially aged out of the only mental disorder qualifying him for commitment under WIS. STAT. ch. 980. That opinion is based on facts that no factfinder has considered, including Bush's recent history at Sand Ridge. Accordingly, we conclude he is entitled to a discharge trial at which the State bears the burden of proving by clear and convincing evidence that he is still a sexually violent person. *See* WIS. STAT. § 980.09(3).

¶14 At the WIS. STAT. § 980.09(2) hearing, the State focused on Bush's recent history of making highly offensive remarks that are, at a minimum, indicative of a concerning thought process. We cannot ascribe Bush's statements controlling weight, however, in our analysis of whether he has met his burden of production. *See Hager*, 381 Wis. 2d 74, ¶30. Endres's opinion was that even though Bush says highly offensive things, he is not likely to act accordingly. And because WIS. STAT. ch. 980 is principally concerned with future *acts* of sexual violence—not thoughts or even threats of such violence—we cannot simply disregard Endres's opinion. *See* WIS. STAT. § 980.01(1b), (7).

¶15 Not, at least, without engaging in impermissible weighing of the evidence. Though the State claims that it is an "open question whether

the circuit court may weigh facts in the record when doing this review[,]" we view that question to have been definitively answered in the negative by *Hager*.[5]  A reasonable factfinder could conclude Bush means to commit the sexually violent things he threatens.  Yet, a reasonable factfinder could also conclude Endres is correct in her assessment and that "despite the explicit and vulgar threats that he often makes," Bush has not followed—and is not likely to follow—through in the way he did when he was younger.  Determining whether Bush is likely to act on his statements is the duty of the factfinder at the discharge trial on remand.

¶16    Our analysis would typically end there.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (observing that cases should be decided on the narrowest possible grounds).  However, as additional justification for requiring a discharge trial in this case, we note that the actuarial instruments used by psychologists to gauge risk have been revised significantly since Bush's last discharge trial in 2004.  Neither of the instruments used by Endres to assess Bush's reoffense risk—the Static-99R

---

[5] As the State correctly notes, it appears that four justices (the two concurring justices and the two dissenting justices) in *State v. Hager*, 2018 WI 40, 381 Wis. 2d 74, 911 N.W.2d 17, concluded that the amendments to WIS. STAT. § 980.09(2) require the weighing of evidence.  *See id.*, ¶66 (Kelly, J., concurring, joined by R.G. Bradley, J.); *id.*, ¶82 (Abrahamson, J., dissenting, joined by A.W. Bradley, J.).  The three-justice lead opinion concluded that weighing the evidence was impermissible during a § 980.09(2) review and appeared to agree with the dissenters' position that a contrary interpretation would render the statute unconstitutional.  *See Hager*, 381 Wis. 2d 74, ¶31 (plurality opinion).

While the courts of this state continue to grapple with the meaning of *Hager*, *see State v. Timm*, No. 2018AP1922, unpublished slip op. ¶¶22-28 (WI App July 21, 2020), we conclude that faithful adherence to *Hager*'s mandate—as well as adherence to the rule that the court's holding may be viewed as that position taken by the justices who concurred on the narrowest grounds, *see State v. Griep*, 2015 WI 40, ¶36, 361 Wis. 2d 657, 863 N.W.2d 567—require that we give effect to the lead opinion which prohibits the weighing of evidence during a WIS. STAT. § 980.09(2) review.

and the VRS-SO—were used by the psychologists at that time, and Endres's report establishes that these instruments are now the predominant method among experts for assessing risk.[6]

¶17    "[A] petition alleging a change in a sexually violent person's status based upon a change in the research or writings on how professionals are to interpret and score actuarial instruments is sufficient for a petitioner to receive a discharge hearing, if it is properly supported by a psychological evaluation applying the new research."  *Richard*, 353 Wis. 2d 219, ¶20. Bush's petition meets these requirements, even if the burden of production (i.e., "would likely conclude") has increased slightly since the time *Richard* was decided.  The existence of an expert opinion applying new professional research that, in Endres's opinion, reduces Bush's reoffense risk below the relevant legal threshold is an independent basis for requiring a discharge trial in this case.

        *By the Court.*—Order reversed and cause remanded for further proceedings.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Although the Static-99 was used at Bush's last discharge hearing, Endres's report states that the Static-99R "replaced the original version of the Static-99 by adding a broader range of developmental samples, and it also included a greater distinction in age categories, thus more accurately reflecting the well-known effect of age on sexual recidivism."